Eb F. LUCKEL, et al.

v.

Furl WHITE, et al.

No. D–0080.

Supreme Court of Texas.

Oct. 23, 1991.

Rehearing Overruled Jan. 8, 1992.

J.M. Slator, III, Houston, Robert C. Bledsoe, and Tevis Herd, Midland, for appellants.

Claude C. Roberts, William A. Teague, Robert I. Peeples, Houston, Rex G. Fortenberry, Beaumont, Chap B. Cain, III, Liberty, Susan M. Edmonson, Seabrook, Bradford Pickett, Liberty, Thomas A. Zabel, Stanley J. Krist, Houston, and E.R. Norwood, Liberty, for appellees.

OPINION

GAMMAGE, Justice.

This suit concerns the construction of a royalty deed in which the "granting," "habendum" and "warranty" clauses recite that a 1/32nd royalty interest is conveyed, but the "subject to" and "future lease" clauses state that the grantee shall be entitled to receive one-fourth of any and all royalties. The grantee's successors (Luckel, et al.) sought declaratory judgment that the deed conveyed an interest in one-fourth of the royalties reserved under all subsequent leases and an accounting for oil and gas production on the land. Both sides moved for summary judgment. The trial court construed the deed as conveying a fixed 1/32nd royalty interest, giving controlling effect to the "granting" clause and holding the "future lease" clause ineffective to convey one-fourth of future royalties on future leases. The trial court's holding follows *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984). The trial court granted a partial summary judgment to the grantor's successors (White, et al.) and severed the cause to make the summary judgment final. The court of appeals affirmed.

792 S.W.2d 485. We reverse the court of appeals, overrule *Alford v. Krum,* and hold that the so-called "future lease" clause was effective to convey a one-fourth interest in all royalties as to future leases.

In 1935 Mary Etta Mayes executed the royalty deed in question to L.C. Luckel, Jr. The land was then subject to an oil and gas lease, the "Coe lease." Mayes had, contemporaneously with execution of the Coe lease, transferred one-half of her royalty interest to her children, and consequently owned only one-half the royalty payable under lease. The Coe lease provided for the usual one-eighth royalty. What Mayes conveyed to Luckel was one-half of the royalty she owned, which amounted to a 1/32nd royalty. The last clause of the deed explained that the Coe lease had reserved a one-eighth royalty and she was conveying one-half of the 1/16th royalty she owned, which conveyed royalty was one-fourth of the total royalty provided for in the Coe lease. The deed is set out in detail in the court of appeals opinion, 792 S.W.2d at 487–88, but we repeat the pertinent parts as follows (emphasis supplied):

["Granting" clause]

I, Mary Etta Mayes, ... [convey to] L.C. Luckel, Jr. *an undivided one thirty-second (1/32nd) royalty interest in* and to the following described property, ...

["Habendum" and "Warranty" clauses]

TO HAVE AND TO HOLD *the above described 1/32nd royalty interest* ... unto the said L.C. Luckel, Jr. his heirs and assigns forever ... *to warrant and forever defend ... the said 1/32nd royalty interest* ...

["Subject-to" clause]

It is understood that said premises are now under lease originally executed to one Coe and that the grantee herein shall receive no part of the rentals as provided for under said lease, but *shall receive one-fourth of any and all royalties paid under the terms of said lease.*

["Future lease" clause]

It is expressly understood and agreed that the grantor herein reserved [sic] the right upon expiration of the present term of the lease on said premises to make other and additional leases ... and the grantee shall be bound by the terms of any such leases ... [and] *shall be entitled to one-fourth of any and all royalties reserved under said leases.*

[Final clause]

It is understood and agreed that Mary Etta Mayes is the owner of one-half of the royalties to be paid under the terms of the present existing lease, the other one-half having been transferred by her to her children and by the execution of this instrument, Mary Etta Mayes conveyed one-half of the one-sixteenth (1/16th) royalty *now reserved by her.*

The Coe lease eventually expired. The land covered by the Mayes–Luckel deed is now the subject of five other mineral leases. Four of these leases provide for royalties of one-sixth (1/6th). The Luckel successors (Luckel) contend the future lease clause entitles them to one-fourth of all of the royalties under the current leases. As to those four leases the 1/24th royalty interest they claim would exceed the 1/32nd interest originally conveyed in the granting clause and warranted in the deed under the Coe lease. The *White* respondents argue the deed entitles Luckel only to a fixed 1/32nd royalty. In effect they contend that when the mineral estate reverted upon expiration of the Coe lease, they owned the rights to any increase in negotiated royalty in future leases because the "future lease" clause was ineffective to increase the Luckel share as to new leases with larger royalties. Thus *White, et al.* argue they are entitled to all of the increase in the royalty amount.

There is no contention that the deed is ambiguous. The construction of an unambiguous deed is a question of law for the court. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners" rule. *Garrett v. Dils Co.,* 157 Tex. 92, 94–95, 299 S.W.2d 904, 906 (1957); 1 E. KUNTZ, THE LAW OF OIL AND GAS, § 16.1 (1987); 6A R. POWELL, THE LAW OF REAL

PROPERTY, ¶ 899[3], at 81A–108 (P. Rohan ed. 1991). "That intention, when ascertained, prevails over arbitrary rules." *Harris v. Windsor*, 156 Tex. 324, 328, 294 S.W.2d 798, 800 (1956). The court, when seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed. *Altman v. Blake*, 712 S.W.2d at 118. "[T]he parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Id.* Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Benge v. Scharbauer*, 152 Tex. 447, 451, 259 S.W.2d 166, 167 (1953). The court should "not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof." *Id.* The question is what effect the one-fourth language of the "future lease" clause should have, given these rules of construction.

Luckel argues that to give effect to all provisions of the deed, in particular the future lease clause, the deed must be interpreted to grant one-fourth of the royalties payable under the Coe lease (which was equal to $\frac{1}{32}$nd of production) and, when that lease expired, one-fourth of the royalties paid under all subsequent leases. The court of appeals concluded that the granting, habendum, and warranty clauses of the deed conveyed a permanent $\frac{1}{32}$nd royalty interest and that the future lease clause was ineffective to convey one-fourth of future reserved royalty, despite its express terms. The court of appeals offered two rationales—a "harmonizing" of the deed under the four corners rule and application of *Alford v. Krum*. We address the issues in that order.

The court of appeals reasoned that all parts of the deed could be harmonized, including the future leases clause, by assuming that the parties to the deed contemplated that all future leases would provide for one-eighth royalty. One-eighth was the "usual" royalty so standard in the 1920s and 1930s that all Texas courts took judi-

cial notice of it. *Garrett v. Dils Co.*, 157 Tex. at 96, 299 S.W.2d at 907. The court interpreted the future lease clause as merely extending the fixed $\frac{1}{32}$nd royalty interest conveyed in the granting, habendum and warranty clauses to future leases, creating a permanent $\frac{1}{32}$nd royalty. Thus, by this "harmonizing," the court of appeals concluded that the clear and unambiguous language "one-fourth of any and all royalties reserved under said leases" really meant a fixed $\frac{1}{32}$nd.

The court's reasoning is not a proper "harmonizing" under the four corners rule, and conflicts with a number of this court's decisions. We do not quarrel with the assumption that the parties probably contemplated nothing other than the usual one-eighth royalty. But that assumption does *not* lead to the conclusion that the parties intended only a fixed $\frac{1}{32}$nd interest. It is just as logical to conclude that the parties intended to convey one-fourth of all reserved royalty, and that the reference to $\frac{1}{32}$nd in the first three clauses is "harmonized" because one-fourth of the usual one-eighth royalty is $\frac{1}{32}$nd. One would therefore conclude the express $\frac{1}{32}$nd granting clause only meant to convey a one-fourth of all future royalties, which "harmonizes" the clauses to the same extent as the court of appeals' analysis. Both this reasoning and the opposite reasoning employed by the court of appeals ignore the express language used, and produce different assumptions about what the parties' actual intent was.

■ The assumption that the parties contemplated only the usual one-eighth royalty is equally consistent with an actual intent to convey a fixed $\frac{1}{32}$nd interest or a one-fourth of the reserved royalty interest. Even if the court could discern the actual intent, it is not the actual intent of the parties that governs, but the actual intent of the parties *as expressed in the instrument as a whole*, "without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules." *Sun Oil Co. v. Burns*, 125 Tex. 549, 552, 84 S.W.2d 442, 444 (1935); *see also Woods v. Sims*, 154 Tex. 59, 65–66,

273 S.W.2d 617, 620 (1954). In particular, the labels we have given the clauses of "granting," "warranty," "habendum" and "future lease" are not controlling, and we should give effect to the substance of un- ambiguous provisions. The language "one- fourth of any and all royalties reserved under" future leases is clear and unambig- uous; in fact, except for the use of one- fourth rather than one-half, it tracks the language of one of this court's opinions describing what an undivided one-half of all reserved royalty interest is. *See Schlitter v. Smith,* 128 Tex. 628, 630, 101 S.W.2d 543, 545 (1937). The future lease clause in the Mayes–Luckel deed recites that the grantee "shall be entitled to one-fourth of any and all royalties reserved under said leases." This language is as effective to grant an interest as the formal "do hereby grant, bargain, sell and convey" language of what we have designated as the "grant- ing" clause. *Sun Oil Co. v. Burns,* 125 Tex. at 553–54, 84 S.W.2d at 444. "We must construe this language as it is written and we have no right to alter it by interpo- lation or substitution." *Dahlberg v. Hol- den,* 150 Tex. 179, 183, 238 S.W.2d 699, 701 (1951). In particular, we may not interpo- late or substitute, as the court of appeals' "harmonizing" has done, to change the clear and unambiguous grant of an interest of one-fourth of reserved royalty to mean a fixed royalty interest of ⅟₃₂nd of produc- tion. The court of appeals erred in "har- monizing" the "future lease" clause to al- ter its clear and unambiguous meaning.

We now address the second reason given by the court of appeals—application of this court's decision in *Alford v. Krum,* 671 S.W.2d 870 (Tex.1984). The court of ap- peals correctly applied *Alford.* In that case, an undivided mineral interest was in- volved. The granting clause stated "one- half of the one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the described tract; the "subject to" clause stated the deed was subject to the existing lease "but covers and includes ⅟₁₆th of all the royalties due under said lease," but the "future lease" clause provided that "in the event that [the existing] lease for any rea-

son becomes canceled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by [the respective parties] each owning a one- half interest in all oil, gas and other miner- als in and upon said land, together with one-half interest in all future rents." This court held that the granting clause conflict- ed with the future lease clause, and that the conflict was resolved in favor of the granting clause because the granting clause was the "controlling language" and "key expression of intent" but the fraction- al interest of the future lease clause was "nothing more than a restatement or con- firmation of the interest deeded in the pre- vious portions of the instrument," "redun- dant" and "unnecessary." 671 S.W.2d at 872–73.

■ The only significant difference be- tween our present case and *Alford* is that *Alford* dealt with the conveyance of a frac- tional mineral interest and the present case deals with a fractional royalty interest. That difference is not material. A royalty interest is an interest in land that is a part of the total mineral estate. *State Nation- al Bank v. Morgan,* 135 Tex. 509, 514, 143 S.W.2d 757, 760 (1940). The royalty inter- est is a property interest that is one of the rights and attributes comprising the miner- al estate; the other rights and attributes include the right to receive delay rentals, the right to share in benefits secured from the lessee such as production payments and the like, the right to develop and produce minerals, and the executive right. *Day & Co. v. Texland Petroleum, Inc.,* 786 S.W.2d 667, 669 & n. 1 (Tex.1990); *Altman v. Blake,* 712 S.W.2d at 118. A royalty interest derives from the grantor's mineral interest and is a nonpossessory interest in minerals that may be separately alienated. *Sheffield v. Hogg,* 124 Tex. 290, 77 S.W.2d 1021 (1934). The same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest conveyed may be larg- er or smaller than the interest conveyed in the minerals in place. *Woods v. Sims,* 154 Tex. at 65, 273 S.W.2d at 621; *Richardson*

*v. Hart*, 143 Tex. 392, 185 S.W.2d 563 (1945). An undivided royalty interest may be conveyed as a fixed fraction of total production or as a fraction of the total royalty interest, and if conveyed as a fraction of the total royalty interest its amount (as a percentage of production) depends upon the royalty reserved in future leases. *Schlitter v. Smith*, 128 Tex. at 630, 101 S.W.2d at 544–45. Thus a royalty deed is, in general, subject to the same legal rules for construction as a mineral deed.

▮▮▮ In Texas, a typical oil and gas lease actually conveys the mineral estate (less those portions expressly reserved, such as royalty) as a determinable fee. *Stephens County v. Mid–Kansas Oil & Gas Co.*, 113 Tex. 160, 173–74, 254 S.W. 290, 295 (1923). The "possibility of reverter" is the real property term of art for what the grantor owns as a future interest in a determinable fee grant; it is the grantor's right to fee ownership in the real property reverting to him if the condition terminating the determinable fee occurs. 2A R. POWELL, THE LAW OF REAL PROPERTY, ¶ 270[9] at 20–17 (P. Rohan ed. 1991). The royalty rights that may revert, as part of the total mineral estate that may revert, are therefore part of this possibility of reverter. Since the royalty rights may be separately alienated, they may be conveyed as part of this possibility of reverter the same as the mineral estate may be. Thus the analysis in *Alford v. Krum* applies equally to mineral deeds or royalty deeds.

▮▮▮ Our concern is, therefore, not with the court of appeals' application of *Alford v. Krum*, but with the *Alford* opinion itself. Upon further consideration, we have concluded that the majority in *Alford* incorrectly failed to harmonize the provisions under the four corners rule and then erred in applying the "repugnant to the grant" rule in disregard of the future lease clause. Consequently, correct application of the harmonizing rule to the Mayes–Luckel deed conflicts with *Alford*. The so-called "future lease" provision in the Mayes–Luckel deed presently conveyed the possibility of reverter to one-fourth fractional interest of the royalty interest as part of the mineral estate. 3A W. SUMMERS, THE LAW OF OIL AND GAS, § 601 (2d ed. 1958). The provisions of the deed are harmonized by construing the grant to be of a ⅟₃₂nd interest (or one-fourth of the reserved royalty under the existing lease) until the existing lease expired. The interest conveyed was an undivided one-fourth of the total reserved royalty interest, which applied to all future leases. This reconciliation of the deed provisions is consistent with our analysis of the deed and method of harmonizing provisions in *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904 (1957). *See also Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563 (1945). Since the deed makes a present conveyance of the possibility of reverter, there is no violation of the rule against perpetuities. *See generally Delta Drilling Co. v. Simmons*, 161 Tex. 122, 127–28, 338 S.W.2d 143, 145 (1960); *Garrett v. Dils Co.*, 157 Tex. at 96–97, 299 S.W.2d at 906–907. In particular, the deed did not condition the effectiveness of the grant on the expiration of the Coe lease. *Cf. Peveto v. Starkey*, 645 S.W.2d 770 (Tex. 1982). The proper way to harmonize the provisions of the Mayes–Luckel deed, consistent with our prior decisions under the four corners rule, is to hold that upon the termination of the Coe lease, Luckel owns an undivided one-fourth of the reserved royalty in all future leases. We therefore overrule *Alford v. Krum*.

▮▮▮ We do note one distinction between the undivided royalty interest granted here and the one granted in *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543 (1937). In that case, the trial court rendered judgment that the royalty deed grantee was entitled to receive one-half of not less than the usual one-eighth royalty. We observed that "although very likely neither of the parties thought it would be less," there was nothing in the deed requiring the grantee to receive at least the share the "usual" royalty would produce. *Schlittler v. Smith*, 128 Tex. at 631, 101 S.W.2d at 544–45. We therefore modified that portion of the trial court judgment. In the present case, the "granting" clause's outright grant of a ⅟₃₂nd fixed royalty means

the parties did express their intent that the undivided one-fourth royalty never should fall below one-fourth of the usual one-eighth, or the ⅟₃₂nd expressly granted.

We conclude the unambiguous Mayes–Luckel deed is properly harmonized to mean that the interest conveyed was one-fourth of the royalties reserved under the existing and all future leases, provided Luckel is to receive not less than ⅟₃₂nd of production, which is one-fourth of the usual one-eighth. We reverse the judgment of the court of appeals and render judgment that the petitioners are entitled to payments from royalties under all existing and future leases on the subject land in accordance with that construction. We remand the cause to the trial court for the accounting sought by Luckel and further proceedings consistent with this opinion.

MAUZY, J., concurs and files an opinion.

PHILLIPS, C.J., joined by GONZALEZ, COOK and HIGHTOWER, JJ., dissents and files an opinion.

MAUZY, Justice, concurring.

I join the court in overruling our regrettable decision in *Alford v. Krum,* 671 S.W.2d 870 (Tex.1984). I would go one step further, however, and adopt Chief Justice Pope's dissenting opinion in that case. As Chief Justice Pope observed, our interpretation of deeds should not be dictated by arbitrary rules like the "repugnant to the grant" rule which moved the *Alford* majority. Rather, our method for understanding the meaning of a deed should be "to ascertain the intention of the parties, when it can be ascertained from a consideration of all parts of the instrument." 671 S.W.2d at 876. In the present case, the evident intention of the parties was to convey one-fourth of the royalties reserved under the existing and all future leases. For that reason, I concur.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent. I agree with both the trial court and the court of appeals that the provisions of the deed may be best harmonized by interpreting the deed to convey a fixed ⅟₃₂nd royalty interest.

The court's preoccupation with giving literal effect to the language of the future-lease clause is akin to a Ptolemaic insistence on placing the earth at the center of the universe. In focusing solely on the words of this one clause, the court has tortured the plain terms of at least three other clauses, which must be fully considered to ascertain the actual intent of the parties. *See, e.g., Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986); *Benge v. Scharbauer,* 152 Tex. 447, 451, 259 S.W.2d 166, 167 (Tex.1953). A fair examination of the four corners of the deed, in my opinion, compels a different result.

On its face, the future-lease clause appears to grant a one-fourth interest in all royalties under future leases, regardless of the size of the royalty. But the granting, warranty, and habendum clauses of the deed all unambiguously convey and warrant a ⅟₃₂nd royalty interest forever. As the court acknowledges, when the Mayes–Luckel deed was executed in 1935, most private oil and gas leases provided for a ⅛th royalty. *See State Nat'l Bank v. Morgan,* 135 Tex. 509, 516, 143 S.W.2d 757, 761 (1940). If we take judicial notice of this fact, as we have before, we may assume that the parties were aware of this standard royalty when they drafted the deed. *See Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *Garret v. Dils Co.,* 157 Tex. 92, 96, 299 S.W.2d 904, 907 (1957). I believe the parties failed to contemplate that a one-fourth share of future royalties might not always equal ⅟₃₂nd of production, and carelessly referred to the interest under future leases as one-fourth of all royalties rather than one fourth of a ⅛th royalty.

This interpretation allows us to harmonize the apparently contradictory language of the future-lease clause with the granting clause's permanent grant of a ⅟₃₂nd royalty interest. Construing the deed as a whole, I would conclude that the parties intended the future-lease clause merely to extend the effect of the grant of a permanent ⅟₃₂nd royalty interest to future leases.

The court argues that it is just as reasonable to suppose that the parties really intended to grant a one-fourth interest in all future royalties and that their mistake came in using language appropriate to a permanent $\frac{1}{32}$nd royalty interest because they thought that the two interests would always be the same. Under this interpretation, the deed conveyed to Luckel (1) a present interest in one fourth of the royalties payable under the Coe lease, or a $\frac{1}{32}$nd royalty, and (2) a separate present interest in a fraction of Mayes's possibility of reverter upon termination of the Coe lease. To avoid a breach of warranty, the court holds that Luckel's fractional interest in the possibility of reverter is now equal to one fourth of all royalties reserved under all leases, or a $\frac{1}{32}$nd royalty, whichever is greater.

Indeed, this interpretation is one possible way of reconciling all the provisions. However, I do not believe that it truly harmonizes the provisions or that it comports with what common sense tells us was probably the intent of the parties. Although possible, it is unlikely that the grantor intended the future-lease clause to grant a separate interest in addition to that granted by the other clauses of the deed. "The oft-repeated expression that a grantor has the power to convey by one instrument different interests in the possibility of reverter and under the subsisting lease should not obscure the fact that very few grantors really intend to convey interests of different magnitude." 2 H. Williams & C. Meyers, *Oil and Gas Law* § 340.2, at 242–43 (1990). Rather than interpreting the future-lease clause as an additional grant, I would give effect to the clear and unambiguous language of the granting, habendum, and warranty clauses, all of which express the intent to grant a permanent $\frac{1}{32}$nd interest.

Finally, despite holding that no irreconcilable conflicts exist between the provisions of the deed, the court deems it necessary to overrule *Alford v. Krum,* 671 S.W.2d 870 (Tex.1984). In that case, when confronted by what we believed to be an irreconcilable conflict between the granting clause and the future-lease clause of a deed, we gave effect to the language of the granting clause, following the "repugnant to the grant" rule. In the present case, no party has urged, nor does the court find, a conflict between the granting clause and any other clause of the deed. I therefore would reserve the question of the continued viability of *Alford* for a case that presents an actual conflict between the provisions of a deed.

GONZALEZ, COOK and HIGHTOWER, JJ., join in this dissent.