911 S.W.2d 531 (1995)
TEMPLE-INLAND FOREST PRODUCTS CORPORATION, Vernon Wells, Mildred Maguire, Joyce Lilley, Myrtle Wells Bailey, Buddie Wells, Pete B. Wells, Margaret V. Gunter, Patsy Shaw, Margaret Jane Ashmore Cohen and Clarence Eugene Irvin, By and Through His Appointed Guardian, Linda Cansler, Appellants,
v.
HENDERSON FAMILY PARTNERSHIP, LTD., Katharine Henderson McGraw, and Husband, Bill F. McGraw, and A.D.J. Partnership, Ltd., Appellees.
No. 09-94-274 CV.
Court of Appeals of Texas, Beaumont.
November 30, 1995.
Rehearing Overruled January 4, 1996.
*532 Linda C. Cansler, Beaumont, Robert G. Osborn, Lufkin, for appellants.
Alan M. McGraw, Rash, Laney, Chapman, Schreiber & Porter, Austin, for appellees.
Before WALKER, C.J., and BURGESS and STOVER, JJ.

OPINION
STOVER, Justice.
This is an appeal from a final summary judgment rendered in a declaratory judgment action concerning the construction of two mineral deeds. This appeal comes from the First District Court in and for Newton County, Texas. Appellees in this case are Henderson Family Partnership, LTD., Katharine Henderson McGraw and husband, Bill F. McGraw, and A.D.J. Partnership, LTD., hereinafter referred to as appellees. Appellants are Temple-Inland Forest Products Corporation, Vernon Wells, Mildred Maguire, Joyce Lilley, Myrtle Wells Bailey, Buddie Wells, Pete B. Wells, Margaret V. Gunter, Patsy Shaw, Margaret Jane Ashmore Cohen and Clarence Eugene Irvin, by and through his appointed Guardian, Linda Cansler, hereinafter called appellants.
The undisputed facts of this case show that on April 30, 1938, J.S. Ashmore, a single man, C.N. Ashmore and wife, Julia Ashmore, Walter Ashmore and wife, Florence Ashmore, and Olar Wells, a feme sole, executed and delivered a deed to forty (40) mineral acres to D.M. Henderson and R.W. Henderson. Also, on April 30, 1938, C.N. Ashmore and wife Julia Ashmore, executed and delivered a deed to forty (40) mineral acres to D.M. Henderson and R.W. Henderson. These deeds were filed of record in the Deed Records of Newton County, Texas. Although the basic facts underlying the present litigation are undisputed, the law applicable to those facts generates this appeal.
The two mineral deeds in question contain identical granting clauses as follows:
... have granted, bargained, sold, conveyed, transferred, set over and delivered, and by these presents do grant, bargain, sell, convey, transfer, set over and deliver unto the said Grantee, an undivided fifteen-sixteenths (15/16ths) interest in, to and of all oil, gas and other minerals, whether similar or dissimilar, on, in, under and that may be produced from the following described land ...
Pertinent provisions of these deeds regarding the reservation of interest by grantors are as follows:
In respect to the undivided one-sixteenth (1/16th) part of and interest in the oil, gas and other minerals retained and reserved by the Grantor in said land, it is understood and agreed that said one-sixteenth (1/16th) interest is and shall always be a royalty interest, and shall not be charged with any of the costs which the Grantee may incur in exploring, drilling, mining, developing and operating wells or mines for the production of oil, gas and other minerals; and, if the Grantee, or his heirs, executors, assigns or any person or concern to whom the Grantee shall give an oil and gas mining lease thereon, shall, by his or their explorations and operations, discover and produce oil, gas and other minerals, *533 the Grantor's one-sixteenth (1/16th) royalty interest above referred to shall be delivered free of cost to the Grantor at the wells or mines or to the credit of Grantor in pipe lines or storage provided by the Grantor. It is expressly understood that the Grantee shall never be required to, under any covenant or obligation, whether express or implied, to drill or operate on said lands or any part thereof for the discovery of or production of oil, and other minerals, before and after discovery, shall be solely at the Grantee's option and election, and that any wells or mines discovered or drilled by the Grantee may be abandoned or operated by him at any time at his election or discretion; provided, that before Grantor's royalty shall be calculated and determined, all oil, gas and other minerals used for light, heat and operations by the Grantee and any taxes against the production shall be first deducted.
....
The rights and interests herein granted, created and reserved shall extend to the respective heirs, executors, administrators, successors and assigns of the parties hereto, it being agreed that the Grantor shall not be required to join in or ratify any oil and gas mining lease which the Grantee may grant by virgue [sic] of his ownership hereunder and that Grantor shall be entitled to none of the bonus money therefor and to no part of the delay rentals paid thereunder; it being further understood that any change of ownership of the one-sixteenth (1/16th) royalty belonging to Grantor, whether effected by conveyance, will, partition or otherwise, shall entitle the respective owners only to their proportionate part of said royalty, ....
The single issue before the trial court and now before this Court of Appeals is a pure question of law: What interests were reserved to Grantors in these mineral deeds?
Appellees contend that the one-sixteenth (1/16th) interests reserved in the mineral deeds are either one-sixteenth (1/16th) mineral interests or, alternatively, one-sixteenth (1/16th) "of royalty" interests. Appellants' position is that the reserved interests in both mineral deeds are one-sixteenth (1/16th) fixed royalty interests. Significantly, appellees are the successors in interest to, and hold title under, the Grantees in these mineral deeds. Appellants are the successors in interest to, and hold title under, the Grantors in the mineral deeds.
Both appellants and appellees filed Motions for Partial Summary Judgment on their respective declaratory judgment actions. The district court, by letter dated the 22nd day of December, 1993, notified the parties that it was denying appellants' motion and granting appellees' motion and finding that the interest reserved was a 1/16th mineral interest. Thereafter, the remaining causes of action asserted by all parties, consisting of claims for attorneys' fees and court costs, were dismissed by Agreed Motion and Order. All issues before the trial court were resolved, a final judgment was then rendered in favor of appellees on June 27, 1994. The district court in final judgment, declared, adjudged and decreed, that the interests reserved in the Mineral Deeds were one-sixteenth (1/16th) mineral interests. Appellants make their appeal from the entry of this judgment bringing to this Court five points of error. The thrust of all appellants' points of error are directed to the trial court's granting of summary judgment favorable to appellees and the trial court's application of appropriate rules of construction regarding these mineral deeds.

MINERAL DEEDSRULES OF CONSTRUCTION
Since neither appellants nor appellees contend that the mineral deeds in question are ambiguous, the construction of these deeds is therefore a question of law for the Court's determination. See Luckel v. White, 819 S.W.2d 459, 461 (Tex.1991); Altman v. Blake, 712 S.W.2d 117, 118 (Tex.1986).
Canons of Construction have developed over the years, but have generally tried to achieve one important goal: determine the intent of the parties from the instrument itself. "The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the `four corners' rule." *534 Luckel v. White, 819 S.W.2d at 461. Although the goal has stayed the same, the rules used to achieve that goal have continuously evolved.
Distinguishing royalty interests from mineral interests requires the application of certain rules. As stated, we must look to the intent of the parties for interpretation. We first examine the granting clause to determine intent. Here we have the grantors conveying (granting) 15/16ths interest in the oil, gas and other minerals, and have by choice reserved a 1/16th of the oil, gas, and other minerals.
Here we are called upon to interpret a deed where the Grantors reserve a 1/16th mineral interest, later convey four of the attributes of that interest, raising the question, what have the Grantors retained. Currently, the Supreme Court has adopted a two-tiered approach to construing deeds. First, "if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts...." Id. at 462. Second, if the court cannot harmonize the deed, the "the court should `not strike down any part of the deed unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof.'" Id. That is, if the deed is in irreconcilable conflict, then the court is instructed to "strike down" parts of the deed. To accomplish this task, we invoke the Canons of Construction.
A mineral interest has five attributes. Those five attributes are: (1) the right to develop; (2) the right to lease; (3) the right to receive bonus payments; (4) the right to receive delay rentals; and (5) the right to receive royalty. Each one of these attributes is a separate, distinct property interest that may be conveyed or it may be reserved in connection with a conveyance of a mineral interest. In Prairie Producing Co. v. Schlachter, 786 S.W.2d 409, 412 (Tex. App.Texarkana 1990, writ denied), the court held that when an owner conveys a mineral estate, all attributes are impliedly transferred as well unless they were specifically reserved to the grantor. The recent case by the Supreme Court (March 30, 1995) of French v. Chevron, 896 S.W.2d 795 (Tex. 1995), addresses the interpretation of mineral deeds. The Supreme Court reexamined all the landmark cases on the Canons of Construction of mineral deeds.
The conflict interpreted by the Supreme Court was in reconciling language in paragraph 1 which appeared to convey a mineral estate, with language in paragraph 2 which implicitly stated there was a royalty interest being conveyed. The court concluded, after applying the Canons of Construction, that the meaning of the deed was to convey "[a] mineral interest stripped of appurtenant rights other than the right to receive royalties." Id. at 798. Viewing the deed from the four corners the Supreme Court concluded the parties intended to convey a mineral interest with reservation, thus conveying only the royalty portion of the mineral interest.
In the instant case we have here the reverse, rather than conveying, the grantors reserved interest in the mineral estate. As we apply the Canons of Construction in examining the deeds in question, we find the grantors (1) conveyed the right to develop; (2) conveyed the right to lease; in other words, they have conveyed their executive rights; (3) conveyed their right to bonus and conveyed their (4) right to delay rental. Under the deeds in question, the grantors gave up the right to develop, lease, receive bonus payments, and receive delay rentals. If the parties had intended the 1/16th retained interest to be a fixed royalty interest, there would have been no need to grant these attributes to the grantee. These attributes would have automatically passed without a grant of the mineral interest. Only when the parties intended that the 1/16th interest retained to be a mineral interest was it necessary to make such a grant. If the Grantors actually intended to grant 100 percent of the mineral interest and retain a 1/16th royalty, then they would have done just that: the granting clause would have granted all minerals (16/16ths), and separately reserved a 1/16th royalty.
The intermediate court in French v. Chevron also determined that the reference to the royalty interest was insufficient to create a royalty interest: "Even the language `this *535 conveyance is a royalty interest only' cannot serve to create a royalty interest without an express reference to royalties for actual production of minerals, the controlling factor in Watkins.[1]" French v. Chevron U.S.A., Inc., 871 S.W.2d 276, 278-279 (Tex.App.El Paso 1994). Here the deeds do not refer to a royalty from actual production as required by French and Altman, supra.
An additional rule of construction is the requirement that a deed should be construed against the grantor so as to convey the greatest estate possible. In Garrett v. Dils Co., 157 Tex. 92, 299 S.W.2d 904, 906 (1957), the Supreme Court held that "[a]nother applicable rule is that should there be any doubt as to the proper construction of the deed, that doubt should be resolved against the grantors."
Here the deeds reserved a mineral interest by the mechanism of granting a fractional mineral estate followed by additional grants. Thus, of the five attributes of a mineral interest, grantors have conveyed four and reserved one. Grantors have reserved a 1/16th mineral interest, with the executive rights passing to the Grantees, thus, we hold from the four corners of the document that the parties intended to retain a 1/16th mineral interest stripped of appurtenant rights other than the right to receive royalties. This harmonizes and gives effect to all portions of the deed.
Appellants raise five points of error, and argue all five collectively. All five points of error involve the construction of the deeds which we have resolved contrary to appellants' argument. Accordingly, appellants' points of error are overruled.
Judgment of the trial court is affirmed.
AFFIRMED.
WALKER, Chief Justice, dissenting.
I respectfully file this dissent.
The majority concludes that, "[i]f the parties had intended the 1/16th retained interest to be a fixed royalty interest, there would have been no need to grant these attributes to the grantee. These attributes would have automatically passed without a grant of the mineral interest."
I take the majority's position to mean that the Grantors of the two subject mineral deeds simply said too much in their efforts to retain a royalty interest only. I submit that it would be difficult to locate a mineral deed more clearly defining the intent of the Grantor than the two deeds under review by this Court. The majority has set forth portions of the subject deeds, however, I think it important to provide a more textual flow of these instruments, as follows:
... Together with the right of ingress and egress in, upon and over said land at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals and removing the same therefrom; together with the use of such amount of the surface of said land as is necessary or useful to produce, save, store, refine, treat, transport and remove such oil, gas and other minerals, including water, and to conduct all operations and erect and use thereon all buildings, derricks, tanks, structures, machinery and equipment as may be necessary or proper for such purpose, together with the right to lay and operate thereon pipe lines, telephone and telegraph lines, and to repair and remove from said land any of Grantee's property thereon at any time, including the right to pull and remove casing.
In respect to the undivided one-sixteenth (1/16th) part of and interest in the oil, gas and other minerals retained and reserved by the Grantor in said land, it is understood and agreed that said one-sixteenth (1/16th) interest is and shall always be a royalty interest, and shall not be charged with any of the costs which the Grantee may incur in exploring, drilling, mining, developing and operating wells or mines for the production of oil, gas and other minerals; and, if the Grantee, or his heirs, executors, assigns or any person or concern to whom the Grantee shall give an oil and gas mining lease thereon, shall, by his or their explorations and operations, discover and produce oil, gas and other minerals, *536 the Grantor's one-sixteenth (1/16th) royalty interest above referred to shall be delivered free of cost to the Grantor at the wells or mines or to the credit of Grantor in pipe lines or storage provided by the Grantor. It is expressly understood that the Grantee shall never be required or under any covenant or obligation, whether express or implied, to drill or operate on said lands or any part thereof for the discovery of or production of oil, gas and other minerals, and that all drilling operations and development for oil, gas and other minerals, before and after discovery, shall be solely at the Grantee's option and election, and that any wells or mines discovered or drilled by the Grantee may be abandoned or operated by him at any time at his election or discretion; provided that, before Grantor's royalty shall be calculated and determined all oil, gas and other minerals used for light, heat and operations by the Grantee and any taxes against the production shall be first deducted.
Grantor further agrees that the Grantee shall have the right at any time to redeem for the Grantor or his heirs, executors and assigns, by payment, any note, deed of trust, taxes, judgments or other liens on the above described land in the event of default of payment by Grantor and be subrogated to the rights of the holder or holders thereof.
The rights and interests herein granted, created and reserved shall extend to the respective heirs, executors, administrators, successors and assigns of the parties hereto it being agreed that the Grantor shall not be required to join in or ratify any oil and gas mining lease which the Grantee may grant by virtue of his ownership hereunder and that Grantor shall be entitled to none of the bonus money therefor and to no part of the delay rentals paid thereunder; it being further understood that any change of ownership of the one-sixteenth (1/16th) royalty belonging to Grantor, whether effected by conveyance, will, partition or otherwise, shall entitle the respective owners only to their proportionate part of said royalty, and that the Grantee shall not be responsible for the payments or delivery of said royalty to any new owners unless and until he shall be furnished with the instrument of transfer or duly certified copy thereof....
I wholeheartedly agree with the majority, that, "The single issue before the trial court and now before this Court of Appeals is a pure question of law: What interests were reserved to Grantors in these mineral deeds?"
Regarding the two deeds under construction, it is clear and uncontested that Grantors intended and did convey a 15/16th mineral interest to Grantees. Thus, we are not confronted with the interest granted, but rather the interest reserved unto Grantors, i.e., a mineral interest or a royalty interest. Through case law analysis and interpretation, a mineral estate consists of five interests: 1) the right to develop; 2) the right to lease; 3) the right to receive bonus payments; 4) the right to receive delay rentals, and 5) the right to receive royalty payments. French v. Chevron U.S.A., Inc., 896 S.W.2d 795 (Tex.1995); citing Altman v. Blake, 712 S.W.2d 117, 118 (Tex.1986). A conveyance of a mineral estate need not dispose of all interest; individual interests can be held back, or reserved, in the Grantor. French, 896 S.W.2d at 797. However, "`[w]hen an undivided mineral interest is conveyed, reserved, or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary intent is expressed.'" French, 896 S.W.2d at 797; citing Day & Co., Inc. v. Texland Petroleum, Inc., 786 S.W.2d 667, 669 n. 1 (Tex.1990). In French, the primary focus was upon the size and nature of the interest conveyed by Grantor to Grantee. Clearly, if the two deeds under consideration reserved a mineral interest, appellees as successors in interest to Grantees, win. Conversely, if the interest retained and reserved by Grantors in the subject deeds was a royalty interest, appellants, successors in interest to Grantors, win.
Having identified those legal attributes applicable to mineral interests, we must determine whether our Grantors retained a 1/16th mineral interest or a 1/16th royalty interest. In reviewing the "four corners" of the mineral deeds, I believe it clear and obvious that *537 the Grantors retained only one of the five attributes applicable to a severed mineral interest, that being, the right to receive royalty payments. I find it compelling that the Grantors in the subject deeds definitively conveyed away all of those rights attributable to a mineral interest. The only right retained was the right to receive royalty payments. In French, the Grantor reserved the right to receive delay or other rentals, or any revenues from leasing or from any renewal or extension of any lease. Unlike those facts in French where the Grantors intent was not clearly defined by deed, the facts in our appeal compel a determination that our Grantors intended to retain and reserve only a royalty interest.
Recitations in the mineral deeds contain no less than six (6) separate and specific references to the reserved interest as "royalty interest." The Grantors of these two deeds very specifically provided that the one-sixteenth (1/16th) interest reserved in each of the mineral deeds "... is and shall always be a royalty interest."
In 1945, our Texas Supreme Court was confronted with the identical issue presently before this Court. That court held that the reserved interest was a one-sixteenth (1/16th) royalty interest, and, in so doing, focussed specifically on the language in the Deed, subsequent to the granting clause, which, in "plain and definite terms" identified the nature of the interest reserved as a "royalty interest." Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699, 700 (1945).
Appellees proffered two principal arguments in the trial court, contending that the reserved interests were either one-sixteenth (1/16th) mineral interests or one-sixteenth (1/16th) "of royalty" interests. Appellees' first argument, that the one-sixteenth (1/16th) interest reserved is that of a mineral interest, does not rise above mere argument. Appellees contend that since the granting clause does not differentiate between the interest granted and the interest reserved, Grantors by choice retained a one-sixteenth (1/16th) mineral interest. Appellees' exact position is that, "[b]ecause a 15/16th mineral interest was granted, the Grantors have retained a 1/16th mineral interest." (emphasis by appellees)
To accept appellees' mineral interest position, we would be compelled to ignore the remaining language contained in these mineral deeds. Appellees contend that since the granting clause of the mineral deeds unambiguously grants an undivided 15/16ths interest, the royalty interest language following the granting clause creates an inconsistent expression of intent by Grantors. Interestingly, appellees cite no authority for this position. Appellees simply assert that, "[t]he granting clause, standing alone, clearly expresses an intent to retain a 1/16th mineral interest."
Appellees argue, alternatively, that the interests retained by Grantors in the mineral deeds were one-sixteenth (1/16th) interests "of royalty." Appellees argued to the trial court that: The granting clause in the mineral deeds, due to the language utilized, granted a 15/16th mineral interest and reserved a 1/16th mineral interest; a 1/16th mineral interest is entitled only to a 1/16th percentage of the lease royalty; there are references in the mineral deeds to the 1/16th reserved interest as royalty interest; a 1/16th "of royalty" interest is, just as a 1/16th mineral interest, entitled only to a 1/16th percentage of the lease royalty; a 1/16th royalty interest, on the other hand, unlike a 1/16th mineral interest, is entitled to 1/16th of all gross production; and, therefore, to avoid a conflict between the granting clauses and all the subsequent references to the reserved interest as royalty interest, the 1/16th reserved interest must be construed as "of royalty" interest.
The trial court properly rejected appellees' "of royalty" argument. However, I would hold that the trial court erred in construing the mineral deeds as retaining and reserving a 1/16th mineral interest "in accordance with the granting clause." At one time, the granting clause in a Mineral Deed was given greater importance in the construction of mineral deeds. However, this rule of construction was specifically overruled and rejected by the Texas Supreme Court in Luckel v. White, 819 S.W.2d 459, 464 (Tex.1991).
To reach its conclusion, the trial court erroneously determined there existed a direct and irreconcilable conflict between the *538 granting clauses of the mineral deeds and all subsequent references and descriptions of the nature of the retained interest as 1/16th royalty interest. In effect, appellees were successful in urging the trial court to consider only the granting clause of these mineral deeds. I believe it was error for the trial court to do so.
We must look to the intent of the Grantors as to the nature of the interests reserved in the mineral deeds. The parties to the two mineral deeds, within the four corners of said deeds, plainly and definitively set forth their agreement that each of the reserved 1/16th interest is a "royalty interest." The mineral deeds do not use the term "of royalty" interest or "mineral interest" where setting forth Grantors' retained interest. Again, six (6) specific references are contained in the respective deeds defining royalty interests. Though each and every reference to Grantors' royalty interest is significant in determining the intent of the parties, I believe that the Grantors' most definitive intent is set forth in the previously referenced paragraph which reads:
The rights and interests herein granted, created and reserved shall extend to the respective heirs, executors, administrators, successors and assigns of the parties hereto it being agreed that the Grantor shall not be required to join in or ratify any oil and gas mining lease which the Grantee may grant by virtue of his ownership hereunder and that Grantor shall be entitled to none of the bonus money therefor and to nopart of the delay rentals paid thereunder; it being further understood that any change of ownership of the one-sixteenth (1/16th) royalty belonging to Grantor, whether effected by conveyance, will, partition or otherwise, shall entitle the respective owners only to their proportionate part of said royalty, and that the Grantee shall not be responsible for the payments or delivery of said royalty to any new owners unless and until he shall be furnished with the instrument of transfer or duly certified copy thereof....
I would hold that the trial court erred in its application of the law in construing the two mineral interest deeds. I would reverse the summary judgment entered by the trial court and render judgment in favor of appellants.
NOTES
[1] Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699 (1945).