# NO. 12-13-00282-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHERILYN ALEXANDER LANDERS AND BILLYE C. ALEXANDER, HEIRS OF W. W. ALEXANDER AND JERRELL FLEMING, SHARON FLEMING, LAVEY ALEXANDER AND DIANNE BATSON,* | § | *APPEAL FROM THE 123RD* |
| *APPELLANTS* | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *RICHARD LIVINGSTON AND DIANNE LIVINGSTON,* | | |
| *APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

This is an appeal from a summary judgment quieting title in Richard and Dianne Livingston to twenty-five undivided royalty acres out of the east half of a 185.50 acre tract in Shelby County, Texas. The trial court denied the motion for summary judgment of Jerrell Fleming, Sharon Fleming, Lavey Alexander, and Dianne Batson, and the motion for summary judgment of Billye C. Alexander and Sherilyn Alexander Landers. In two issues, Appellants maintain the trial court erred in denying their motions for summary judgment and in granting the Appellees' motion. The resolution of Appellants' issues turns on whether the trial court erred in its interpretation of a royalty deed on which Appellants' claim is based. We reverse and render judgment for Appellants.

### BACKGROUND

On July 15, 1941, Theron and Thelma Hughes and J.W.C. and Noda Hughes leased to M.L. Stephens the minerals under 185.5 acres in Shelby County.

On September 27, 1947, the Hugheses executed a royalty deed conveying to M.L. Stephens an undivided twenty-five acre royalty interest under the east one-half of the 185.5 acres. On the same day, Stephens assigned the twenty-five acre royalty interest to William H. Ball and W.W. Alexander.

Omitting the metes and bounds description of the 185.5 acres, the royalty deed reads, as follows:

ROYALTY DEED

THE STATE OF TEXAS  }

COUNTY OF SHELBY   }          KNOWALL MEN BY THESE PRESENTS}

      That We, Theron Hughes and wife, Thelma Hughes, and J. W. C. Hughes and wife, Noda Hughes, hereinafter called Grantor (whether one or more), for and in consideration of the sum of Ten ($10.00) Dollars, (and other good and valuable consideration) cash in hand paid by M. L. Stephens hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver, unto the said grantee an undivided Twenty-five full royalty interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under, and that  may be produced and mined from the following described lands situated in the County of Shelby and State of Texas, to-wit:

(metes and bounds omitted)

together with the right of ingress and egress at all times for purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom.  This grant shall run, and the rights, title and privileges hereby granted shall extend to Grantee herein, and to Grantee's heirs, administrators, executors and assigns, for a period of perpetual years from date hereof and as long thereafter as oil, gas or other minerals, or either of the[m], is produced or mined from the lands described herein, in paying or commercial quantities.  If at the expiration of said perpetual years from date hereof, oil, gas or other minerals or either of them, is not being produced or mined from said land or any portion thereof is paying or commercial quantities, this contract shall be null and void and the Grantee's rights hereunder shall terminate.

Said lands, or portions thereof, being now under oil and gas lease executed in favor of M. L. Stephens it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes Twenty-five (25) full royalty acres of all the oil, [sic] royalty, and gas royalty, and casinghead gas and gasoline royalty, and royalty from other minerals or products, due and to be paid under the terms of said lease.  And it is further understood and agreed that notwithstanding the Grantee does not by these presents acquire any right to participate in the making of future oil and gas mining leases on the portion of said lands not at this date under lease nor of participating in the making of future leases, should any existing or future leases for any reason become cancelled or forfeited nor of participating in the bonus or bonuses which Grantor herein shall receive for any future lease, nor of participating in any rental to be paid for the privilege of deferring the assessment of a well under any lease, now or hereafter;

NEVERTHELESS, during the term of the grant, neither the Grantor nor the heirs, administrators, executors and assigns of the Grantor shall make or enter into any lease or contract for the development of said land or any portion of same for oil, gas or other minerals, unless each and

2

every such lease, contract, leases or contracts, shall provide for at least a royalty on oil of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas; and in the event Grantor, or the heirs, administrators, executors, and assigns of the Grantor, or as in the status of the fee owners of the land and minerals, or as the fee owner of any portion of said land, shall operate and develop the minerals therein, Grantee herein shall own and be entitled to receive as a free royalty hereunder, (1) An undivided 25 full royalty acres of all the oil produced and saved from the premises delivered to Grantee's credit free of cost in the pipe line, (2) An undivided 25 full royalty acres interest and portion of the value or proceeds of the sales of natural gas when and while the same is used or sold off the premises, (3) An [sic] 25 full royalty acres of the net amount of gasoline or other products manufactured from gas or casinghead gas produced from wells situated on the premises, during the term hereof,

TO HAVE AND TO HOLD the above described property and rights, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Grantee, and to Grantee's heirs, administrators, executors, and assigns, forever; and Grantor does hereby bind ourselves and our heirs, administrators[,] executors and assigns, to warrant and forever defend all and singular, the said property and rights unto the said Grantee, and Grantee's heirs, administrators, executors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

(Signatures and notary's acknowledgments omitted)

Appellees, the Livingstons, are the successors in title to the Hugheses, the grantors of the royalty deed. Appellants Billye C. Alexander, Sherilyn Alexander Landers, LaVey Alexander, and Dianne Batson are the successors in title to W.W. Alexander. Appellants Jerrell and Sharon Fleming succeeded to the interest of William H. Ball.

The 1941 oil and gas lease from the Hugheses to Stephens expired at the end of its ten year primary term in 1951.

Because of the dispute as to the ownership of the twenty-five acre royalty interest, Noble Energy, Inc. filed an interpleader action in the Shelby County District Court interpleading the disputed production proceeds into the registry of the court and seeking a determination of the ownership of the disputed twenty-five acre royalty interest.

Appellees assert that the twenty-five acre royalty interest terminated with the expiration of the ten year term of the 1941 Hughes–Stephens lease without oil or gas production. Appellants maintain the grant for a "perpetual" term was a grant of a fee simple interest in the royalty interest.

The questions of the duration of the royalty interest must be resolved by construing the language used in the royalty deed from the Hugheses to Stephens. In the trial court, none of the parties claimed the language was ambiguous.

3

**Applicable Law**

The construction of an unambiguous deed is a question of law for the court. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). In *Luckel*, the supreme court summarized the rules or canons that should guide the court in construing an unambiguous deed.

> The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners" rule. "That intention, when ascertained, prevails over arbitrary rules." The court, when seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed. "[T]he parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. The court should "not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof." (citations omitted).

*Id*. at 461-62.

**Discussion**

The parties used a form for a term royalty deed. The deed states that this grant shall run "for a period of *perpetual* years from the date hereof and as long thereafter as oil, gas or other minerals. . . is produced or mined from the lands described herein in paying quantities. . . ." (emphasis added). It then provides that "[i]f at the expiration of said *perpetual* years from date hereof, oil, gas or other minerals . . . is not being produced in paying . . . quantities, this contract shall be null and void and the Grantee's rights hereunder shall terminate." (emphasis added).

The deed contains an ordinary "subject to" clause that recites "this sale is made subject to the terms of said lease." The same clause further specifies that the interest granted is a nonparticipating royalty interest, that is, that the grantee could not participate in the making of future leases nor share in the bonuses which the grantor might receive under future leases.

The deed also contained a "future lease" clause providing that all future leases by grantor shall provide "for at least a royalty on oil of the usual one-eighth" and further providing that under future leases, grantee "shall own and be entitled to receive as a free royalty hereunder an undivided 25 full royalty acres of all the oil produced. . . ." There followed similar provisions relating to natural gas and gasoline.

Appellees read the ordinary "subject to" clause with the last sentence of the granting clause. That sentence provides that "[i]f at the end of said perpetual years" no oil, gas or other

4

minerals is being produced from said lands, "Grantee's rights hereunder shall terminate." Appellees argue that this sentence, when read together with the "subject to" clause, evinces the parties' intention to limit the grant of perpetual years to only the life of the lease then in effect. Since there was no production when the lease expired nine years and eight months later without production, the grantee's rights under the royalty deed terminated with the lease. Appellees attempt to harmonize a grant for perpetual years and thereafter as long as oil, gas, or other minerals are produced with their view that the grant was really for nine years and eight months and for so long thereafter as there is production under the prevailing lease. Appellees argue the "term of the grant could have lasted forever had there been production under the M.L. Stephens lease and had the production continued in perpetuity." This is, at best, a strained interpretation. The parties stated that "if at the end of perpetual years" there is no production "Grantee's rights hereunder shall terminate." They *did not provide*, as Appellees assert, that, if there is no production *under the prevailing lease*, the grantee's rights will terminate.

The parties employed a form commonly used for a royalty deed for a term of years. If they had inserted a term of ten, one hundred, or a thousand years, an argument that the term of the grant was modified by the "subject to" clause would not have been raised. The "subject to" clause was included, as is ordinarily the case, to protect the grantor under the general warranty and to delineate the grantee's right to the royalty due from production under that lease.

Appellees' interpretation largely ignores fully a third of the instrument containing detailed provisions relating to future leases. The parties plainly contemplated that the grantor might enter into future leases during the term of this grant and that the grantee would be entitled to royalties under those leases. Future leases would have been impossible if the grant terminated with the existing lease. Appellees acknowledge the difficulty in harmonizing the future lease provisions with their interpretation, and, as an alternative, argue that primacy should be given to their interpretation of the granting clause.

"It is the rule that the intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph. The entire instrument must be construed as a whole in order to arrive at the intention of the parties." *Bumpass v. Bond*, 114 S.W.2d 1172, 1174 (Tex. 1938). "The relative positions of the instrument are not necessarily controlling; the modern and sounder reason being to ignore the technical distinctions between the various parts

5

of the deed. . . .” ***Reynolds v. McMan Oil & Gas Co***., 11 S.W.2d 778, 781 (Tex. Comm’n App. 1928, holding approved).

The future lease clause obligated the grantor to enter into no future leases providing for less than a one-eighth royalty. It further specified that the grantee was entitled to receive under future leases as a free royalty an undivided twenty-five full royalty acres. This clearly evidences the intent of the parties that the grantee receive royalty on all future leases, not just under the prevailing lease. Appellees’ interpretation treats the entire section regarding future leases as surplusage, which violates the rules of contract interpretation. *See **J.M. Davidson, Inc. v. Webster***, 128 S.W.3d 223, 235 (Tex. 2003). A deed is subject to the same general rules of interpretation and construction as a contract. *See **Luckel***, 819 S.W.2d at 461-62.

It has been observed that the parties may not always read and understand form language. But they are almost certain to be aware of and understand specific language they insert in the form. *See generally **McMahon v. Christmann***, 303 S.W.2d 341 (Tex. 1957). We can be relatively sure that the parties consciously and intentionally inserted the word “perpetual” as the term of the lease. We must assume they intended “perpetual” to have its ordinary, everyday meaning, that is forever or for an unlimited duration. *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 977 (1978).

Viewing the instrument in its entirety, we conclude that Appellees’ interpretation of the royalty deed is erroneous and therefore the trial court erred in granting their motion for summary judgment. We further conclude that, as Appellants argue, the parties intended to create a twenty-five acre nonparticipating royalty in fee simple and that the trial court should have granted their motion for summary judgment on that basis. Appellants’ first and second issues are sustained.

## DISPOSITION

Having sustained Appellants’ first and second issues, we ***reverse*** the trial court’s judgment and ***render*** judgment quieting title in Appellants in the twenty-five acre nonparticipating royalty interest in fee simple. *See **Commr’s Court of Titus Cnty. v. Agan***, 940 S.W.2d 77, 81 (Tex. 1997) (“When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence,

6

determine all questions presented, and render such judgment as the trial court should have rendered.").

**BILL BASS**
Justice

Opinion delivered August 27, 2014.
*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 27, 2014**

**NO. 12-13-00282-CV**

**SHERILYN ALEXANDER LANDERS AND BILLYE C. ALEXANDER, HEIRS OF W. W. ALEXANDER AND JERRELL FLEMING, SHARON FLEMING, LAVEY ALEXANDER AND DIANNE BATSON,**
Appellants
V.
**RICHARD LIVINGSTON AND DIANNE LIVINGSTON,**
Appellees

Appeal from the 123rd District Court

of Shelby County, Texas (Tr.Ct.No. 11-CV-31,845)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that the judgment same should be reversed and rendered.

It is therefore ORDERED, ADJUDGED and DECREED by this court that the judgment of the trial court below in favor of Appellees, **RICHARD LIVINGSTON AND DIANNE LIVINGSTON**, be, and the same is, hereby **reversed** and judgment is **rendered** quieting title in Appellants', **SHERILYN ALEXANDER LANDERS AND BILLYE C. ALEXANDER, HEIRS OF W. W. ALEXANDER AND JERRELL FLEMING, SHARON FLEMING, LAVEY ALEXANDER AND DIANNE BATSON,** twenty-five acre nonparticipaing royalty interest in fee simple, more particularly described in the royalty deed recorded in Volume 214, Page 245 of the Shelby County Deed Records. All costs in this cause expended in this court be, and the same are, hereby adjudged against the Appellees, **RICHARD LIVINGSTON AND DIANNE LIVINGSTON**, for which let execution issue; and that this decision be certified to the court below for observance.

Bill Bass, Justice.

*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*