

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00099-CV

EDWARD ALLEN NELSON,

Appellant

 v.

WAYNE WELDON WEBB,
RONALD KELLY WOOD,
MARK ELLIOTT TOWNER, AND
CHESAPEAKE ENERGY COMPANY,

Appellees

From the 18th District Court
Johnson County, Texas
Trial Court No. C200800310

## MEMORANDUM OPINION

In ten issues, appellant, Edward Allen Nelson, complains about a summary

judgment granted in favor of appellees, Wayne Weldon Webb, Ronald Kelly Wood, and

Mark Elliott Towner. We reverse and remand.

## I.  BACKGROUND

This dispute centers on ownership of royalty interests associated with tracts of land located in Johnson County, Texas.  The royalty interests were owned by Othello Nelson, who died intestate on October 9, 1985.  At the time of her death, Othello's surviving children, Nelson, Webb, and Helen Leticia Wood, were the heirs of her estate.  In an affidavit executed in support of his motion for summary judgment, Webb stated that:

> [A]t the time of her death[,] she [Othello] owned a house located in Dallas[,] Texas.  Edward Allen Nelson wanted to buy mine and Helen Leticia Wood's interest in the house.  At the time of her death[,] the only thing I knew that Othello Nelson owned other that [sic] the house were personal items and some savings bonds.

However, it was later discovered that Othello had reserved royalty interests associated with land in Johnson County.[1]

In any event, Nelson alleged that he paid, without reimbursement, all funeral costs and expenses for Othello—an amount that allegedly exceeded $3,300.  According to Nelson, in exchange for that consideration and an additional $8,000 paid, Webb and Helen "agreed to convey all of their right, title, and interest" in Othello's estate to Nelson.  The conveyance, executed on May 24, 1989, specifically stated that:

---

[1] Othello's royalty interests are mentioned in several warranty deeds, including an August 4, 1965 conveyance of the land located in Johnson County and described as 80 acres of the A. J. Tucker Survey. Specifically, Othello reserved a "1/9th of the 1/8th royalty of all oil, gas[,] and other minerals in, on[,] or under the above described property."  Moreover, in a conveyance dated February 17, 1966, Othello reserved the same royalty interest in another tract of land located in Johnson County and described as 11.5 acres of the W. P. King Survey and 26.5 acres of the B. B. B. and C. R. R. Co. Survey.  None of the contracts included in the record indicate that Othello owned anything other than royalty interests associated with the land in question—a conclusion that neither Nelson nor appellees dispute.

Whereas the grantee [Nelson] herein has paid to the grantors [Webb and Helen] herein the sum of eight thousand dollars (being four thousand to each of them), and the grantors have granted, sold[,] and conveyed and do hereby grant, sell[,] and convey to the grantee herein all of their right, title[,] and interest in the Estate of Othello Nelson, deceased, less and except any U.S. Savings bonds that were jointly in the name of the decedent and either of grantors.

The property conveyed was described as follows:

[L]ying and being in the County of Dallas, State of Texas, more particularly described as follows, to-wit:

Being Lot 5 and the West 1 ft. of Lot 6, Block D, Pecan Heights Addition, an Addition to the City of Dallas, Texas, per map recorded in Volume 6, Page 286, Map Records of Dallas County, Texas; and being one of the lots conveyed in deed from Leon Long to J. W. Birkhead dated October 14, 1954, filed for record October 18, 1954, in the Dallas County Clerk's Office.

The conveyance did not specifically reference any royalty interest that Othello had.

Helen died intestate on September 5, 1995, leaving two heirs, Ronald and Towner. Subsequently, in 2008, Webb sued Nelson and Chesapeake Energy Company, asserting a claim for trespass to try title and a suit to quiet title.[2] Specifically, Webb argued that he did not intend to convey to Nelson the Johnson County royalty interests he inherited upon Othello's death when Webb and Helen conveyed the Dallas County property on May 24, 1989. The record reflects that Chesapeake has entered into a lease agreement for the purpose of exploration, extraction, and production of oil, gas, and/or other minerals on the Johnson County tracts. It was alleged that Nelson "received

---

[2] In July 2009, the trial court granted requests to non-suit Chesapeake as to both Webb's and Ronald's claims.

rental payments, bonus payments[,] and royalty payments" from Chesapeake based on oil and gas production on the land in question.

Thereafter, Nelson filed an answer to Webb's lawsuit, asserting, among other things, affirmative defenses of release by assignment and statute of limitations. Later, Ronald filed a petition in intervention against Nelson and Chesapeake, seeking to quiet title and asserting a trespass to try title claim and claims for accounting, conversion, and negligence. Nelson responded to Ronald's petition in intervention by filing an answer denying all of the allegations contained in Ronald's petition.

On March 9, 2010, Nelson filed an original counterclaim, requesting a declaration from the trial court that he is the owner of the subject oil and gas interests. Nelson also filed a third-party petition against Towner requesting a declaration from the trial court that he owns the subject oil and gas interests. Towner filed an original answer denying the allegations contained in Nelson's third-party petition and alleging that "Othello Nelson died intestate and as a result thereof[,] her estate passed to her heirs on the date of her death[,] leaving no estate."

On December 9, 2010, Webb filed a traditional motion for summary judgment, arguing that he "is the rightful owner of 1/3 of the mineral interest retained by Othello Nelson." Ronald and Towner jointly filed a traditional motion for summary judgment seeking a declaration that:

> Edward Allen Nelson owns a one-third undivided interest, Wayne Weldon Webb owns a one-third undivided interest, Ronald Kelly Wood owns a one-sixth undivided interest, and Mark Elliott Towner owns a one-sixth undivided interest in and to the mineral estates described in the pleadings and the royalties and bonuses paid as a result of said estates.

Nelson later filed a traditional motion for summary judgment as well.

Subsequently, the trial court denied all three motions for summary judgment, stating "that there is a genuine issue of material fact that exists which prevents the granting of summary judgments." After hiring a new attorney, Nelson filed a motion for new trial, arguing that his motion for summary judgment should have been granted because: (1) the May 24, 1989 conveyance expressed an intent to convey all property owned by Othello at the time of her death; (2) the conveyance complies with both the property and probate codes; (3) the conveyance complies with the Statute of Frauds; and (4) Ronald, Webb, and Towner failed to establish title to the mineral interests in their names. Nelson also filed a motion for reconsideration containing arguments that mirrored those made in his motion for new trial. In response, Ronald filed a motion to enter a judgment granting his and Webb's motions for summary judgment but denying Nelson's summary-judgment motion. Ronald indicated that the "attorneys for Wayne Weldon Webb, Ronald Kelly Wood, and Mark Elliott Towner have approved the proposed judgment as to form and substance."

On February 2, 2012, the trial court conducted a hearing on Nelson's motion for reconsideration and Ronald's motion to enter judgment. At the conclusion of the hearing, the trial court denied Nelson's motion for reconsideration. The trial court then granted summary judgment in favor of Webb, Ronald, and Towner. The judgment included descriptions of the "mineral interests" that Othello allegedly owned at the time of her death and stated that: (1) Webb and Nelson owned one-third undivided

interests in the minerals; and (2) Ronald and Towner owned one-sixth undivided interests in the minerals. And finally, the judgment noted that: "All other relief requested herein and not granted is denied." It is from this judgment that Nelson now appeals.

## II.    FINALITY OF THE JUDGMENT

In his brief, Nelson mentions that nothing in the judgment referenced Ronald's remaining claims against Nelson or clearly and unequivocally stated that it finally disposed of all parties and all claims. Thus, Nelson appears to question whether the judgment entered is appealable.

In *Lehmann v. Har-Con Corp.*, the Texas Supreme Court gave the appellate courts a test to use to determine when a judgment is final for appellate purposes. *See generally Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001). The *Lehmann* Court discussed two alternate tests for determining the finality of a judgment. *Id.* at 205. The first test is that a judgment is not final unless it actually disposes of every pending claim and party. *Id.* The second test is that a judgment is not final unless it clearly and unequivocally states that it finally disposes of all claims and all parties. *Id.* Restated, to meet the second test for finality, there must be some other clear indication in the judgment that the trial court intended the judgment to completely dispose of the entire case. *Id.*

Here, the thrust of the parties' complaints concerned ownership of royalty-interest rights in light of the May 24, 1989 conveyance—complaints that the trial court's judgment endeavored to resolve. Furthermore, the trial court's judgment specifically stated that "[a]ll other relief requested herein and not granted is denied," which evinces

the trial court's intent for the judgment to be final. Based on our review of the trial court's judgment and our review of the Reporter's Record of the February 2, 2012 hearing that was the basis of the judgment, we conclude that the trial court intended the judgment to completely dispose of the entire case. Accordingly, the judgment was final—erroneous, but final—for appellate purposes, and this Court has jurisdiction to decide the issues presented on appeal.[3] *See id.* at 200.

## III. STANDARD OF REVIEW

We review a trial court's decision to grant or deny a summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Our review is limited to consideration of the evidence presented to the trial court. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We take as true all evidence favorable to the nonmovant, and we indulge

---

[3] Interestingly, Ronald has not challenged the finality of the trial court's judgment. Moreover, in their joint motion for summary judgment, Ronald and Towner stated that the only issues for the trial court to consider were: (1) who owns Othello's "mineral estates"; and (2) whether the May 24, 1989 conveyance effectively transferred ownership of Othello's "mineral estates" to Nelson. Other than Ronald's original petition, there is no further discussion of Ronald's other claims in the record. Furthermore, Nelson filed a motion to abate this appeal due to his fear that the judgment was not final. We denied Nelson's motion to abate. However, it is noteworthy that appellees never responded to Nelson's motion to abate regarding the finality of the trial court's February 13, 2012 judgment.

every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661.

When both sides move for summary judgment and the trial court grants one motion but denies the other, we review both sides' summary-judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## IV. ANALYSIS

In the instant case, Nelson asserts numerous challenges to the trial court's judgment. Specifically, in his first two issues, Nelson argues that the judgment improperly granted relief never requested in the pleadings and that the judgment improperly awarded a mineral interest without any evidence that Othello owned a mineral interest at the time of her death. Appellees concede that the trial court's judgment awarded a mineral interest "when it should have been for a royalty interest." However, appellees contend that this error can be corrected by this Court.

As stated by the Texas Supreme Court, the purpose of a summary judgment is to "'provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact.'" *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296-97 (Tex. 2011) (quoting *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962)). On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Summary judgments may only be granted upon grounds expressly

asserted in the summary-judgment motion. *Magee*, 347 S.W.3d at 296-97 (citing TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)). "Granting summary judgment on a claim not addressed in the summary judgment therefore is, as a general rule, reversible error." *Id.* (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam)).

In their joint summary-judgment motion, Ronald and Towner asserted that they each owned one-sixth undivided interests in Othello's "mineral estates." In a separate summary-judgment motion, Webb argued that he "is the rightful owner of 1/3 of the mineral interest retained by Othello Nelson." The trial court's awarding of Othello's "mineral interests" to the parties comports with that which was requested in appellees' summary-judgment motions. Accordingly, we cannot say that the trial court granted summary judgment upon grounds not expressly asserted in appellees' summary-judgment motions. *See* TEX. R. CIV. P. 166a(c); *see also Magee*, 347 S.W.3d at 296-97; *McConnell*, 858 S.W.2d at 341.

However, despite the fact that it comports with appellees' summary-judgment motions, the trial court's judgment is improper because it is based upon erroneous grounds asserted in appellees' summary-judgment motions.[4] In effect, the trial court's judgment awards mineral estates to appellees that Othello did not own. A review of the record indicates that Othello owned royalty interests in the subject tracts—1/9th of the 1/8th royalty of all oil, gas, and other minerals in, on, or under the relevant properties.

---

[4] Appellees argued in the trial court that they owned "mineral interests" that were allegedly owned by Othello; however, they reverse course on appeal and state that what they really meant is that they owned royalty interests previously owned by Othello.

Nevertheless, the trial court's judgment states that Othello owned mineral interests in three tracts of land in Johnson County. Further, in the trial court's judgment, the division of the interests is couched in terms of mineral interests, not royalty interests. Appellees concede this error; but, they assert that the error can be corrected because there is no material difference in a fractional mineral interest and a fractional royalty interest. *See generally Luckel v. White*, 819 S.W.2d 459 (Tex. 1991). We disagree.

> In *Luckel*, the Texas Supreme Court explained:

> A royalty interest is an interest in land that is a part of the total mineral estate. The royalty interest is a property interest that is one of the rights and attributes comprising the mineral estate; the other rights and attributes include the right to receive delay rentals, the right to share in benefits secured from the lessee such as production payments and the like, the right to develop and produce minerals, and the executive right. A royalty interest derives from the grantor's mineral interest and is a nonpossessory interest in minerals that may be separately alienated. The same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest conveyed may be larger or smaller than the interest conveyed in the minerals in place.

*Id.* at 463-64 (internal citations omitted). Clearly, this language demonstrates that a royalty interest and a mineral estate are materially different with the royalty interest being but a part of the mineral estate. *See Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986) ("There are five essential attributes of a severed mineral estate: (1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, [and] (5) the right to receive royalty payments."); *see also Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003) ("When an oil and gas lease reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a

possibility of reverter and has the right to receive royalties. A royalty interest, as distinguished from a mineral interest, is a non-possessory interest.");

In any event, appellees rely on the *Luckel* Court's statement that "a royalty deed is, in general, subject to the same legal rules for construction as a mineral deed" to support their contention that royalty and mineral interests are the same. 819 S.W.2d at 464. This statement merely references the governing canons of construction for construing language contained in mineral and royalty deeds—both of which are contracts. *Id.* There is no indication in *Luckel*, nor are we aware of any authority, suggesting that a royalty interest and a mineral interest are one and the same.

Here, the trial court granted summary judgment based on the grounds asserted by appellees—grounds that happen to be erroneous based on the evidence contained in the record. Viewing the evidence in the light most favorable to Nelson, the nonmovant, we cannot say that appellees met their burden of conclusively proving all elements of their claim as a matter of law. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (stating that a plaintiff who moves for traditional summary judgment has the burden of conclusively proving all elements of his claim as a matter of law); *see also City of Keller*, 168 S.W.3d at 816 (noting that evidence is conclusive only if reasonable people could not differ in their conclusions). Accordingly, because it improperly grants a mineral interest without any supporting evidence demonstrating that Othello owned a mineral interest at the time of her death, the trial court's judgment must be reversed. *See* TEX. R. CIV. P. 166a(c); *Clear Creek Basin*

*Auth.*, 589 S.W.2d at 678; *see also City of Keller*, 168 S.W.3d at 816.  We sustain Nelson's second issue.[5]

## V.    CONCLUSION

Based on the foregoing, we reverse the trial court's February 13, 2012 judgment and remand for proceedings consistent with this opinion.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Reversed and remanded
Opinion delivered and filed May 23, 2013
[CV06]

---

[5] We do not express an opinion as to whether the May 24, 1989 conveyance included Othello's royalty interests because the resolution of that dispute is not necessary to the disposition of this case at this time.  *See* TEX. R. APP. P. 47.1, 47.4.