*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-11-00699-CV

Maurice C. **HUNSAKER**,
Appellant

v.

**BROWN DISTRIBUTING COMPANY, LTD.**,
Appellee

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 10-10-00109-CVL
Honorable Stella Saxon, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  March 21, 2012

REVERSED AND RENDERED

In this appeal we are asked to construe a deed conveying a mineral interest in property. At issue is whether Appellant Maurice C. Hunsaker conveyed the entire one-quarter mineral interest he owned to Brown Distributing Co., Ltd. ("Brown"), or whether he conveyed one-half of the one-quarter mineral interest owned by him.[1] It is undisputed that at the time Hunsaker

---

[1] The deed at issue was originally between Hunsaker as Grantor and J. Dan Brown as Grantee. By a series of uncontroverted conveyances, J. Dan Brown's interest was conveyed to Brown Distributing. For simplicity, Brown and his successors are collectively referred to as "Brown." Hunsaker does not challenge or dispute that Brown Distributing acquired its interests from the Hunsaker Deed.

executed the deed and conveyed the property to Brown, he owned a one-quarter mineral interest in the property. In the trial court, the parties brought competing motions for summary judgment and stipulated that the deed was unambiguous. The trial court agreed with Brown's interpretation and ruled that the deed conveyed Hunsaker's entire one-quarter mineral interest to Brown. Because we hold that Hunsaker conveyed only one-half of his one-quarter mineral interest to Brown, we reverse the trial court's judgment and render judgment in favor of Hunsaker.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We must therefore consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When competing motions for summary judgment are filed, and one is granted and the other denied, we must review all issues presented and render the judgment the trial court should have rendered. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). Finally, when a deed is unambiguous, as the parties agree the deed in this case is, then its construction is a question of law for the court. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991).

## THE WARRANTY DEED

By Assumption Warranty Deed dated April 23, 1980, Hunsaker conveyed to Brown real property located in La Salle County. The deed states the following:

> THAT MAURICE C. HUNSAKER . . . ha[s] GRANTED, SOLD AND CONVEYED, and by these presents do[es] GRANT, SELL, AND CONVEY unto the said Grantees the following described property situated in LaSalle County, Texas, to-wit:

1,120.84 acres of land, more or less, out of Survey 154, Abstract 1077, Survey 155, Abstract 275, LaSalle County, Texas, and being more particularly described by metes and bounds on the attached EXHIBIT "A."

Exhibit A, in turn, stated the following:

1,120.84 acres of land, more or less, out of Survey 154, Abstract 1077, Survey 155, Abstract 275, LaSalle County, Texas:

BEGINNING at a fence corner post found for the Northeast corner of said Survey 154 and the Northeast corner of this tract;

THENCE, [full metes and bounds description omitted].

*There is also included in this conveyance one-half (1/2) of all oil, gas and other minerals* (such other minerals to include, but to not be limited to, hydrocarbons, lignite, coal, sulphur, uranium, sand and gravel) and all rights and appurtenances thereto *in, on and under said property now owned by Grantor*.

(emphasis added). Further, at the end of the deed, the following is stated:

This conveyance is made and accepted *subject to all reservations*, restrictions, covenants, conditions, rights-of-way, mineral leases, royalty and mineral conveyances and easements *now outstanding and of record*, if any, in LaSalle County, Texas affecting the above described property, including, but not limited to, the following:

(1) Oil, Gas and Mineral Lease to I. W. Lovelady dated December 15, 1976, and recorded in Volume 201, Pages 147-149, LaSalle County Deed Records.

(2) Road right-of-way to the State of Texas, dated April 17, 1954, and recorded in Volume Z-4, Pages 371-372, LaSalle County Deed Records.

(3) Road right-of-way to the State of Texas, dated April 30, 1956, and recorded in Volume 115, Pages 265-267, LaSalle County Deed Records.

(4) Channel Easement to the State of Texas, dated April 30, 1956, and recorded in Volume 115, Pages 262-265, LaSalle County Deed Records.

(5) An undivided one-quarter (1/4) interest in and to all of the oil and gas and other minerals and mineral rights reserved as set out in Deed to George Strickhausen, III, Inc., dated June 30, 1978, and recorded in Volume 213, Pages 181-185, LaSalle County Deed Records.

(6) One-half (1/2) of all oil, gas and other minerals reserved in Deed from Fred M. Crapo, Trustee of the Davis M. Kitselman Trust to I. W. Lovelady dated June 29, 1977, and recorded in Volume 206, Pages 263-266, LaSalle County, Texas, Deed Records, which reservations read as follows:

> "Grantor does hereby except and reserve unto Grantor, Grantor's successors and assigns forever an undivided one-half (1/2) of all the oil, gas and other minerals and mineral rights, whether metallic or non-metallic (including, but not by way of limitation, coal, lignite and fissionable materials and any other valuable mineral or mineral right, whether now known or not), in, on, upon or underlying said premises, whether same be drilled for mined, strip mined or recovered in any other manner, together with the perpetual right of ingress and egress to and from said land for the purpose of drilling, exploring, and mining and in every way operating for such minerals and mineral rights and removing same; it being understood that Grantor shall be entitled to receive one-half (1/2) of any delay rentals, royalties or other payments which become due or payable or are paid under the terms, of the existing oil and gas lease on the lands herein conveyed."

(emphasis added).

## DISCUSSION

Our primary duty when construing a deed is to ascertain the intent of the parties from all of the language in the deed by considering its "four corners." *Luckel*, 819 S.W.2d at 461. Thus, we "harmonize all parts of the deed," understanding that the "parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Id.* at 462 (quotation omitted). "Even if different parts of the deed appear contradictory or inconsistent," we must "strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions." *Id.* Thus, the labels given clauses, such as "granting," "warranty," habendum," and "future lease," do not control; instead, we must "give effect to the substance of unambiguous provisions." *Id.* at 463. We therefore determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998).

Brown argues that the granting clause in the deed conveys Hunsaker's entire interest in the property, including his one-quarter mineral interest, because Hunsaker did not specifically reserve any mineral interest in the property. *See Eastin v. Dial*, 288 S.W.3d 491, 500 (Tex. App.—San Antonio 2009, pet. denied) (explaining that a "deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate"). Hunsaker agrees that he did not *reserve* one-half of his mineral interest in the property, but emphasizes that he need not have reserved anything as he *conveyed only half* of his mineral interest. Thus, in considering the four corners of the deed, we must determine whether the deed conveyed Hunsaker's entire mineral interest in the property or whether it conveyed only one-half of Hunsaker's interest.

In considering the deed as a whole document, we agree with Hunsaker's interpretation that he conveyed only one-half of his mineral interest in the property. As noted above, the deed states that Hunsaker grants, sells, and conveys land that is more particularly described on Exhibit "A." Exhibit A, in turn, describes the metes and bounds of the property and then states the following:

> *There is also included in this conveyance one-half (1/2) of all oil, gas and other minerals* (such other minerals to include, but to not be limited to, hydrocarbons, lignite, coal, sulphur, uranium, sand and gravel) and all rights and appurtenances thereto in, *on and under said property now owned by Grantor*.

(emphasis added). The end of the deed then states that the conveyance is made and accepted "subject to *all reservations . . . now outstanding and of record*." It then lists three reservations relating to the mineral estate at issue:

> (1) Oil, Gas and Mineral Lease to I. W. Lovelady dated December 15, 1976, . . . .

(5) An undivided one-quarter (1/4) interest in and to all of the oil gas and other minerals and mineral rights reserved as set out in Deed to George Strickhausen, III, Inc., dated June 30, 1978, . . . .

(6) One-half (1/2) of all oil, gas and other minerals reserved in Deed from Fred M. Crapo, Trustee of the Davis M. Kitselman Trust to I. W. Lovelady dated June 29, 1977, and recorded in Volume 206, Pages 263-266, LaSalle County, Texas, Deed Records, which reservations read as follows:

> "Grantor does hereby except and reserve unto Grantor, Grantor's successors and assigns forever an undivided one-half (1/2) of all the oil, gas and other minerals and mineral rights, whether metallic or non-metallic (including, but not by way of limitation, coal, lignite and fissionable materials and any other valuable mineral or mineral right, whether now known or not), in, on, upon or underlying said premises, whether same be drilled for mined, strip mined or recovered in any other manner, together with the perpetual right of ingress and egress to and from said land for the purpose of drilling, exploring, and mining and in every way operating for such minerals and mineral rights and removing same; it being understood that Grantor shall be entitled to receive one-half (1/2) of any delay rentals, royalties or other payments which become due or payable or are paid under the terms, of the existing oil and gas lease on the lands herein conveyed."

In considering these provisions of the deed so that we can harmonize all parts of the deed and give effect to every clause, we agree with Hunsaker that the first clause of the deed conveys property that is "more particularly described" on Exhibit A. Exhibit A then states that Hunsaker is conveying one-half of all gas and other minerals "in, on and under said property *now owned* by" Hunsaker. (emphasis added). The end of the deed explains the reservations that existed at the time Hunsaker made the conveyance, i.e. "all reservations . . . *now outstanding* and of record, . . . including, *but not limited to*, the following . . . ." (emphasis added). In listing the reservations *now outstanding*, the deed makes clear that Hunsaker could not own one-half of the oil, gas and other minerals in the property. According to the plain language of the deed, an undivided one-quarter mineral interest was reserved as set out in Deed to George Strickhausen, III, and an

undivided one-half mineral interest was reserved in Deed from Fred M. Crapo, Trustee of the Davis M. Kitselman Trust, to I.W. Lovelady. Thus, in harmonizing all parts of the deed and giving effect to all provisions, we hold that Hunsaker conveyed to Brown one-half of the mineral interest he owned at the time of the conveyance. *See Stewman Ranch, Inc. v. Double M Ranch, Ltd.*, 192 S.W.3d 808, 809, 813 (Tex. App.—Eastland 2006, pet. denied) (holding that a deed reserving "an undivided one-half of the royalties to be paid on the production of oil, gas and other hydrocarbons from the described lands *which are presently owned by Grantors* for and during the lives of Helen A. Stewman and O.T. Stewman, Jr." reserved a life estate in one-half of the royalties that the grantors owned at the time of the conveyance, not one-half of the total royalties).

We decline to adopt Brown's interpretation of the deed because to do so would not give effect to all of the deed's provisions. Brown argues the granting clause conveys all of Hunsaker's interest in both the surface and mineral estate. In an attempt to discount the last paragraph of Exhibit A, Brown argues that "[w]hen Hunsaker conveyed . . . '(1/2) of all . . . minerals . . . in, on and under said property now owned by Grantor,' he was conveying 1/2 of the mineral interest from the land described, not from the interest described." According to Brown, "[t]his means that Hunsaker conveyed 1/2 of all the mineral interest in the land, not 1/2 of the minerals he owned." However, such an interpretation renders the last paragraph of Exhibit A meaningless as there would have been no need to include it. Such an interpretation also conflicts with the deed's list of reservations, which reflects that three-fourths of the mineral estate had been reserved by other parties. Thus, the four corners of the deed show that Hunsaker could not have conveyed one-half

of all the mineral interest in the property as he did not own one-half of all the mineral interest in the property.[2]

Brown also argues that Hunsaker's interpretation of the deed is inconsistent with the rule that when a deed or conveyance references a mineral interest "under the land described," the deed conveys the mineral interest under the entire tract, regardless of the part of the mineral interest actually owned by the grantor. For support, Brown cites *Middleton v. Broussard*, 504 S.W.2d 839, 842 (Tex. 1974), and *Averyt v. Grande, Inc.*, 717 S.W.2d 891 (Tex. 1986). However, those cases are factually distinguishable from this case as neither contained the unique language "now owned by Grantor." *See Stewman Ranch*, 192 S.W.3d at 812 (distinguishing similar cases by explaining that the language in its deed included the words "which are presently owned by Grantors").

### CONCLUSION

In order to harmonize all parts of the deed and give effect to all provisions, we conclude that the deed conveyed only one-half of Hunsaker's mineral interest in the property. As Hunsaker owned a one-quarter mineral interest in the property at the time of the conveyance, he conveyed one-half of a one-quarter mineral interest. We therefore reverse the judgment of the trial court and render judgment that the Assumption Warranty Deed executed by Hunsaker to Brown dated April 23, 1980, conveyed one-half of Hunsaker's one-quarter mineral interest in the

---

[2] We note that in its brief, Brown argues that such a common sense conclusion conflicts with this court's opinion in *Hausser v. Cuellar*, 345 S.W.3d 462, 470 (Tex. App.—San Antonio 2011, pet. denied). We disagree. In *Hausser*, we disapproved of *Neel v. Killam Oil Co.*, 88 S.W.3d 334, 341 (Tex. App.—San Antonio 2002, pet. denied), for relying on a prior deed to interpret the deed at issue in that case. We emphasized that by relying on a prior deed, *Neel* failed to ascertain the parties' intent from the four corners of the deed. *Hausser*, 345 S.W.3d at 470. Here, however, we are not looking to a prior deed for interpretation. The deed at issue in this case reflects through its reservations that Hunsaker could not have owned a one-half mineral interest in the property.

property to Brown, resulting in Hunsaker retaining ownership in one-eighth of the minerals under the 1,120.84 acres of land, more or less, described in the Assumption Warranty Deed.

Catherine Stone, Chief Justice