Opinion filed May 23, 2019



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00141-CV

_____

## RAHLEK, LTD. ET AL., Appellants/Cross-Appellees

## V.

## ROBERT G. WELLS ET AL., Appellees/Cross-Appellants

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. 5951**

## O P I N I O N

This appeal primarily involves a dispute regarding the interpretation of a warranty deed dated July 6, 2006 (the 2006 Deed). The parties' dispute centers on whether the grantors, Rahlek, Ltd. and Eugenia Harris Campbell, conveyed to the grantee, Lake Phantom Acres, L.P., only a fraction of the grantors mineral and royalty interests on all new production or whether the grantors conveyed the entirety of their mineral and royalty interests on all new production. After considering

competing summary judgment motions, the trial court ruled that the deed was unambiguous and construed it to convey the entirety of the grantors' mineral and royalty interests on all new production. The trial court then held a bench trial on damages, affirmative defenses, and attorney's fees and rendered a final judgment.

In five issues, Appellants—Rahlek, Ltd., Eugenia Harris Campbell, and her four children (the successors of Campbell's interest)—challenge the trial court's final judgment in favor of Appellees—Lake Phantom Acres, L.P. and the successors of Lake Phantom's interest, which includes Ricky Grubbs. Specifically, Appellants contend that the trial court erred when it (1) incorrectly construed the 2006 Deed; (2) denied Rahlek's counterclaim for unjust enrichment against Grubbs; (3) permitted Grubbs to bring an unjust-enrichment counterclaim against Campbell's four children (the Campbell Children); and (4) denied the Campbell Children's affirmative defenses of waiver and estoppel. In Appellants' fifth issue, they request us to remand the issue of attorney's fees if the trial court incorrectly construed the 2006 Deed.

Appellee Grubbs also cross-appealed. In his sole cross-issue, Grubbs contends that the trial court erred when it held that Section 16.069 of the Texas Civil Practice and Remedies Code did not apply to save Grubbs's otherwise time-barred counterclaim.

We overrule Appellants' first and fourth issues, and we do not reach Issues Two, Three, and Five. We also sustain Appellee/Cross-Appellant Grubbs's sole cross-issue. Accordingly, we affirm in part and reverse and remand in part.

*Background Facts*

On July 6, 2006, Rahlek, Ltd. and Eugenia Harris Campbell conveyed the property and certain mineral and royalty interests they owned in and under the property to Lake Phantom Acres, L.P. by a warranty deed with a vendor's lien. At the time of this conveyance, Rahlek and Campbell collectively owned the surface

2

and one-quarter (1/4) of the minerals and royalties in and under the property. The other three-quarters (3/4) of the mineral and royalty interest under the property is not relevant to this case.

After the execution of the 2006 Deed, Lake Phantom subdivided the property into multiple tracts and conveyed its interest to multiple parties, who in turn, made similar conveyances to others. On September 30, 2014, some of these subsequent property owners, including Robert G. Wells and his wife (collectively, the original Plaintiffs), filed a declaratory judgment action against Rahlek and Campbell, seeking a declaration as to what interests the grantors actually conveyed in the 2006 Deed.

Campbell, like Lake Phantom, had also conveyed her interests in the property after the execution of the 2006 Deed. She conveyed all the mineral and royalty interests she owned in the property to her four children—Archibald R. Campbell III, Douglas M. Campbell, Eugenia H. Campbell, and John H. Campbell—in equal shares. On March 9, 2015, the Campbell Children joined the lawsuit by filing a plea in intervention. The Campbell Children countersued for declaratory judgment, similarly asking the trial court to interpret the deed, but in their favor.

As part of their plea in intervention, the Campbell Children also joined several other parties who likewise had an interest in the property as a result of subsequent conveyances by Lake Phantom (collectively, Defendants in Intervention). Grubbs is one of the Defendants in Intervention. In 2008, Lake Phantom sold the property and all of the mineral interests it owned under the property to Grubbs. Grubbs subdivided the property into two tracts: the Grubbs "A" Lease Tract and the Grubbs "D" Lease Tract (collectively, the Grubbs Lease Tracts). Both of these tracts were originally part of the property conveyed in the 2006 Deed.

In response to the Campbell Children's plea in intervention, Grubbs filed a counterclaim in his original answer against the Campbell Children alleging, among

other claims, unjust enrichment.[1]  According to Grubbs, the Campbell Children were wrongfully paid royalties from production on the Grubbs "A" Lease Tract because he owned the entirety of the one-quarter (1/4) royalty interest under the tract.[2]  The record reflects that the statute of limitations barred this counterclaim.  However, Grubbs argued that the counterclaim was nonetheless authorized under Section 16.069 of the Texas Civil Practice and Remedies Code.

Rahlek later filed its own unjust-enrichment counterclaim against Grubbs. Rahlek argued that Grubbs wrongfully received royalties that Rahlek was entitled to.

After the parties filed competing traditional motions for summary judgment, the trial court granted partial summary judgment in favor of Appellees (the original Plaintiffs and Defendants in Intervention).  The trial court concluded that the deed was unambiguous and construed it to convey the entirety of the grantors' mineral and royalty interests on all new production and to reserve "all current oil and gas production."  The trial court also denied Rahlek's unjust-enrichment counterclaim and held that Section 16.069 did not revive Grubbs's time-barred counterclaim.  The trial court then held a bench trial on damages, affirmative defenses, and attorney's fees.  It ultimately rendered final judgment in favor of Appellees, awarding damages in accordance with its findings, and declined to award attorney's fees to either party on appeal.  This appeal followed.

---

[1]Because Grubbs seeks to recover past royalties paid to the Campbell Children through various legal theories and because an action for unjust enrichment is the proper mechanism through which to seek such a remedy, *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 692 (Tex. 1986), we consider all of Grubbs's counterclaims together as simply a claim for unjust enrichment.  Unjust enrichment claims are governed by a two-year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007).

[2]This is the same interest that Appellees contend Rahlek and Campbell conveyed to Lake Phantom.

4

*Analysis*

In Appellants' first issue, they contend that the trial court erred when it granted Appellees' traditional motion for summary judgment because the trial court erroneously interpreted the 2006 Deed. Specifically, Appellants assert that the trial court erred when it held that the deed was unambiguous and construed it to convey the entirety of the grantors' mineral and royalty interests in and under the property to Lake Phantom.

We review a summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In doing so, we consider all the evidence in the light most favorable to the nonmovant, indulge all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When competing traditional motions for summary judgment are filed, and one is granted and the other denied, we must review all issues presented and render the judgment the trial court should have rendered. *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

To determine whether the trial court erred in its interpretation of the 2006 Deed, the first issue we must address is whether the deed is ambiguous. The question of whether a deed is ambiguous is a question of law for the court. *See ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). Our primary goal when construing a deed is to ascertain the true intention of the parties as expressed within the "four corners" of the instrument. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The four-corners rule requires the court to ascertain the intent of the parties solely from all of the language in the deed. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (citing *Luckel*, 819 S.W.2d at 461). The intent that governs is not the intent that the parties meant but failed to express but, rather,

5

the intent that is expressed. *Luckel*, 819 S.W.2d at 462. Additionally, we must strive to "harmonize all parts of the deed" and construe it "to give effect to all of its provisions." *Id.* When different parts of a deed appear to be contradictory or inconsistent, we must attempt to construe the instrument so that no provision is rendered meaningless. *Id.*

An ambiguity does not arise simply because the parties advance conflicting interpretations. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 601 (Tex. 2018). Rather, only when a deed remains susceptible to two or more reasonable interpretations, after the court applies the applicable rules of interpretation, is the deed ambiguous. *See ConocoPhillips*, 547 S.W.3d at 874. If a deed is worded in such a way that it can be given a certain or definite legal meaning, then the deed is not ambiguous. *See Endeavor*, 554 S.W.3d at 601.

Generally, deeds are construed to confer upon the grantee the greatest estate that the terms of the instrument will allow. *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963). In other words, a deed will pass whatever interest the grantor has in the land, unless it contains language showing a clear intention to grant a lesser estate. *See Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952). Thus, unless the deed contains reservations or exceptions that reduce the estate conveyed, a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance. *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956).

Both reservations and exceptions in deeds must be clear and specific. We will not find "reservations by implication." *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018) (quoting *Sharp*, 252 S.W.2d at 154). "A reservation of minerals to be effective must be by clear language." *Id.* (quoting *Sharp*, 252 S.W.2d at 154). Similarly, exceptions, which generally are strictly construed against the grantor, must identify, with reasonable certainty, the

property to be excepted from the larger conveyance. *Combest v. Mustang Minerals, LLC*, 502 S.W.3d 173, 179–180 (Tex. App.—San Antonio 2016, pet. denied).

**The 2006 Deed**

The 2006 deed lists Rahlek and Campbell as the "Grantor" and Lake Phantom as the "Grantee." It is undisputed that together Rahlek and Campbell owned all of the surface estate and that each owned an undivided one-eighth (1/8) interest in the mineral and royalties under the property (i.e., they each owned one-half (1/2) of the collective one-fourth (1/4) interest in minerals and royalties). The deed is fairly short and contains the following provisions in the order they appear:

**Property:**

1680.21 acres of land in Coleman County, Texas being out of the John Sanders Survey 162, Abstract 594, said 1680.21 acres being that tract of land described in deed from John W. Harris to Eugenia Harris Campbell and Joan Harris Kelso dated August 4, 2000, and recorded in Volume 698, Page 94, Coleman County Deed Records and being more particularly described in attached Exhibit "A."

**Reservations from and Exceptions to Conveyance and Warranty:**

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances, that affect the property, rights of adjoining owners in any walls and fences situated on a common boundary; and discrepancies, conflicts or shortages in area or boundary line; and encroachments or overlapping of improvements.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns, forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs,

7

executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part hereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

Grantor RESERVES unto itself and its successors and assigns all current oil and gas production. Grantor CONVEYS unto Grantee and its successors and assigns one-eighth (1/8) of mineral and royalty on all new production which are owned by Grantors upon the date of this conveyance.

The parties stipulated at trial that "current oil and gas production" meant production from wells producing on the date of the 2006 Deed. Further, they stipulated that "new production" meant production from new wells drilled after the date of the 2006 Deed. On the date of the conveyance, the property was subject to two oil and gas leases signed in the 1920s.

While both Appellants and Appellees argue that the 2006 Deed is unambiguous, they propose drastically different interpretations. The parties agree that, under the 2006 Deed, the grantors generally conveyed all of the surface estate and reserved "all current oil and gas production." They dispute, however, what percentage of the minerals and royalties the deed conveyed on all new production.

Their dispute centers on the specific conveyance of an interest in minerals and royalties "on all new production," which appears after the general conveyance of the surface and mineral estate in the granting/habendum clause. The general conveyance reads: "Grantor . . . grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging . . . ." The specific conveyance reads: "Grantor CONVEYS unto Grantee and its successors and assigns one-eighth (1/8) of mineral and royalty on all new production which are owned by Grantors upon the date of this conveyance."

8

According to Appellants, the plain language of the specific conveyance indicates that the grantors conveyed only a fraction (1/8) of their collective mineral and royalty interests (1/4) on all new production and that grantors did not convey the entirety of each of their fractional interests. Appellants argue that the specific conveyance limited the scope of the general conveyance. Under Appellants' interpretation, the grantors conveyed only one-eighth (1/8) of their collective one-quarter (1/4) mineral interest and one-eighth (1/8) of the royalties on new production attributable to such one-quarter (1/4) mineral interest—the legal effect of such conveyance being that they retained seven-eighths (7/8) of their collective one-quarter (1/4) mineral interest and seven-eighths (7/8) of the royalties on new production attributable to such one-quarter (1/4) mineral interest.

Appellees, on the other hand, argue that, because each grantor owned an undivided one-eighth (1/8) mineral and royalty interest and because the deed conveys that same interest ("one-eighth (1/8)") in "mineral and royalty on all new production," the deed indicates that the grantors conveyed the entirety of each of their fractional interests in mineral and royalty on all new production. Appellees argue that the word "which" in the specific conveyance refers to the two separate one-eighth (1/8) interests that each grantor owned. Appellees also argue that the word "of" in the phrase "one-eighth (1/8) of mineral and royalty" does not proportionally reduce the grant but simply highlights the type of interests being conveyed. Appellees also note that Appellants did not expressly reserve any mineral interests other than "current oil and gas production." Under Appellees' interpretation, the grantors each conveyed 100% of their individual one-eighth (1/8) mineral and royalty interests on all new production (or, in other words, 100% of their collective one-fourth (1/4) interest in minerals and royalties on all new production), and the grantors did not reserve any interest in minerals or royalties on new production. We agree with Appellees.

Based on its granting/habendum clause, we first note that the 2006 Deed initially conveyed a full fee-simple interest in the property. *See Sharp*, 252 S.W.2d at 154; *City of Stamford v. King*, 144 S.W.2d 923, 928–29 (Tex. Civ. App.—Eastland 1940, writ ref'd). This includes all of the surface and mineral rights in and under the property. *See Sharp*, 252 S.W.2d at 154; *City of Stamford*, 144 S.W.2d at 928–29. Here, along with the entirety of the surface estate, the deed conveyed "all and singular the rights and appurtenances thereto in any wise belonging [to the property]"—in other words, all of the mineral estate. *See Taylor v. Cty. Sch. Trustees of Eastland Cty.*, 229 S.W. 670, 671 (Tex. Civ. App.—El Paso 1921, writ ref'd) (explaining that such language in the habendum clause "was a conveyance of the fee-simple title," which included the oil, gas, and other mineral interests under the property).

The deed, however, expressly makes this general conveyance "subject to the reservations from and exceptions to conveyance and warranty." The only express reservation that the grantors made in the 2006 Deed appears two paragraphs after the granting/habendum clause. That reservation reads: "Grantor RESERVES unto itself and its successors and assigns all current oil and gas production." Importantly, the 2006 Deed does not contain a provision clearly reserving any other mineral rights to the grantors. As a result, the grantors failed to clearly and expressly reserve seven-eighths (7/8) of their collective one-fourth (1/4) mineral interest and seven-eighths (7/8) of the royalties on new production attributable to such one-quarter (1/4) mineral interest. *See Melton v. Davis*, 443 S.W.2d 605, 608 (Tex. Civ. App.—Tyler 1969, writ ref'd n.r.e.) (holding that, if appellees had intended to reserve the disputed minerals, they could have done so by apt language specifically and unequivocally expressing such intent). As such, the only interest reserved in the 2006 Deed is in "all current oil and gas production."

Therefore, in light of the general conveyance and express reservation, at this point in the 2006 Deed, the grantors have conveyed all of the surface estate and the mineral estate (which implicitly includes the minerals and royalties on all new production) and have only explicitly reserved "all current oil and gas production." Now, the question remains: What did the grantors intend by the inclusion of the second, more specific conveyance of "one-eighth (1/8) of mineral and royalty on all new production which are owned by Grantors upon the date of this conveyance"?

To read the specific conveyance as limiting the mineral and royalty interests being conveyed to only a fractional carve-out of the grantors' collective one-quarter (1/4) interest, as opposed to the entirety of their fractional interests in the property, would contradict and conflict with the general conveyance—by which the grantors conveyed the entirety of the mineral estate—and would render the general conveyance meaningless and superfluous. More importantly, to read the specific conveyance as granting a lesser estate (that is, a fractional one-eighth (1/8) of the collective one-quarter (1/4) interest rather than a conveyance of each grantors' entire one-eighth (1/8) fractional interest) would, in effect, allow the grantors to make a reservation by implication. That is, it would permit the grantors to generally convey the entire mineral estate, then specifically convey a portion of the mineral interests, and in turn implicitly reserve the mineral interests not explicitly reserved in the specific conveyance. Such an interpretation, in light of the general conveyance, would directly contradict the rule against reservations by implication. *Perryman*, 546 S.W.3d at 119. Thus, we decline to read the second conveyance in such a manner.

Instead, we read the specific conveyance as simply clarifying, highlighting, and confirming the specific quantity and extent of the grantors' mineral interest being conveyed to the grantee through the general conveyance—the entirety of their individual one-eighth interests on new production—rather than to read it as limiting

11

the general conveyance. Because each grantor owned an undivided one-eighth (1/8) interest in the minerals and royalties, which is the same fractional interest being conveyed in the specific conveyance, and because the grantors only expressly reserved "all current oil and gas production," we construe the 2006 Deed as (1) conveying the entirety of each of their individual one-eighth, fractional interests in "mineral" and "royalty on all new production" and (2) reserving only "all current oil and gas production." We conclude that this interpretation is required to ensure that no provision in the 2006 Deed is rendered meaningless. *See Luckel*, 819 S.W.2d at 462. That is, it is the only reasonable way to harmonize the provisions in the 2006 Deed—namely, the general conveyance, the express reservation, and the specific conveyance.

To support their position that Rahlek and Campbell did not convey the entirety of each of their one-eighth (1/8) mineral and royalty interest on new production, Appellants rely heavily upon *Hunsaker v. Brown Distributing Co.*, 373 S.W.3d 153 (Tex. App.—San Antonio 2012, pet. denied). In *Hunsaker*, the grantor owned an undivided one-quarter (1/4) interest in minerals underlying his property, which consisted of approximately 1,120 acres in La Salle County. *Hunsaker*, 373 S.W.3d at 155. The grantor executed a deed in which he purported to convey the entirety of the property, which he described by metes and bounds in an attached exhibit. *Id.* In that exhibit, which described the surface of the property, the grantor also included a specific grant of a mineral interest. *Id.* The specific grant read as follows: "There is also included in this conveyance one-half (1/2) of all oil, gas, and other minerals . . . in, on and under said property now owned by Grantor." *Id.* The parties disputed whether the grantor conveyed a fraction of his mineral interest or the entirety of his mineral interest. *Id.* at 156–57. The grantor agreed that "he did not *reserve* one-half of his mineral interest in the property, but emphasize[d] that he need not have reserved anything as he *conveyed only half* of his mineral interest." *Id.* at 157.

12

Based upon the language in the *Hunsaker* deed, and by harmonizing all of the provisions within the four corners of the deed, the San Antonio Court of Appeals concluded that the grantor conveyed only one-half (1/2) of his one-quarter (1/4) mineral interest rather than the entirety of his one-quarter (1/4) mineral interest. *Id.* at 157–58. As in *Hunsaker*, where the grantor generally conveyed the property without any limiting language and then specifically conveyed a fractional mineral interest without expressly reserving a mineral interest, Appellants argue that the grantors here also conveyed the surface estate and specifically conveyed only a fractional mineral estate on new production. Appellants assert that, similar to the facts in *Hunsaker*, there was no need for the grantors to expressly reserve any mineral or royalty interests on new production because they specifically granted only a fraction of their interests on new production, by including the latter, specific conveyance. We disagree.

Unlike the 2006 Deed, the deed in *Hunsaker* did not include in its granting/habendum clause language indicating a conveyance of a full fee-simple interest. *See City of Stamford*, 144 S.W.2d at 928–29. Specifically, it did not include the following language, which does appear in the 2006 Deed: "Grantor . . . grants, sells, and conveys to Grantee the property, *together with all and singular the rights and appurtenances thereto in any wise belonging . . .*" (emphasis added). To the contrary, the granting/habendum clause in the *Hunsaker* deed simply reads: The grantor does "GRANT, SELL, AND CONVEY unto the said Grantees the following described property situated in LaSalle County, Texas, to-wit: [a description of the surface estate]." *Hunsaker*, 373 S.W.3d at 155. Thus, the *Hunsaker* deed did not express an intent to convey both the surface estate and the mineral estate. As such, because the grantor in *Hunsaker* did not generally convey the mineral estate in the granting/habendum clause—unlike the grantors in this case—there was no need for the grantor in *Hunsaker* to expressly reserve a mineral interest when he later

13

specifically conveyed only a fraction of his collective mineral interest.  *See id.* at 158.

However, where, as in the present case, the deed *does* express an intent to convey both the surface estate and the mineral estate, we conclude that the grantors were required to expressly reserve a mineral interest if they intended to reserve such an interest.  Because the 2006 Deed limits its general conveyance to only the listed reservations and exceptions, and then only reserves "all current oil and gas production" without reserving any other mineral interests, we conclude that *Hunsaker* does not compel us to reach a similar result—that the grantors only conveyed a fraction of their collective mineral and royalty interests.  To the extent that *Hunsaker* stands for the proposition that a grantor may reserve an interest in minerals without making an express reservation, we decline to follow such a rule, in light of the Texas Supreme Court's decision in *Perryman v. Spartan Texas*.  *See Perryman*, 546 S.W.3d at 119 (holding that the court will not find a "reservation[] by implication").

Accordingly, because the 2006 Deed can be given a definite and certain legal meaning, we conclude that it is unambiguous.  *See Endeavor*, 554 S.W.3d at 601. We interpret the deed to convey the entirety of each of the grantors' individual one-eighth (1/8) mineral interest, which includes all of the royalties on new production attributable to such an interest, and to reserve only current oil and gas production. Therefore, we affirm the trial court's interpretation of the 2006 Deed and overrule Appellants' first issue.

In light of our disposition of Appellants' first issue, we need not reach Appellants' second, third, and fifth issues, which are all contingent upon this court finding error in the trial court's interpretation of the 2006 Deed.  *See* TEX. R. APP. P. 47.1.

In Appellants' fourth issue, they contend, in the alternative, that even if the trial court correctly construed the 2006 Deed, the trial court nonetheless erred when it denied the Campbell Children's affirmative defenses of waiver, equitable estoppel, and quasi estoppel against Grubbs's unjust-enrichment counterclaim. Appellants assert that they conclusively proved these affirmative defenses at trial as to the Grubbs "A" Lease Tract. We disagree.

When, as in this case, neither party requests findings of fact and conclusions of law following a bench trial, we will imply all findings necessary to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). Thus, we presume that the trial court resolved all factual disputes against waiver, equitable estoppel, and quasi estoppel. *See Mo. Pac. R.R. Co. v. Limmer*, 299 S.W.3d 78, 84 (Tex. 2009). If the reporter's record is filed on appeal, as it was here, implied findings may be challenged on factual- and legal-insufficiency grounds in the same manner as jury findings or a trial court's express findings of fact. *Bradberry*, 526 S.W.3d at 480.

To successfully challenge the legal sufficiency of an adverse finding on an issue on which the appellant had the burden of proof, the appellant must conclusively establish all vital facts in support of that issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822, 827 (Tex. 2005). We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822. Evidence is conclusive only if reasonable people could not differ in their conclusions, which depends on the facts of each case. *Id.* at 816.

We conclude that Appellants have not conclusively established all the vital facts of either waiver, equitable estoppel, or quasi estoppel. Waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver is largely an issue of intent. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). A party may establish an implied waiver through a party's actions, but the surrounding facts and circumstances must clearly demonstrate an intent to waive the right. *Id.* Mere silence or inaction cannot establish waiver unless the inaction shows an intent to relinquish the right. *Id.* at 157. Waiver is ordinarily a question of fact. *Id.* at 156. However, when the facts and circumstances are undisputed, the question is one of law. *Id.* at 156–57.

In support of their affirmative defenses, the Campbell Children cite to the following undisputed facts: Grubbs owns the surface of the Grubbs "A" and Grubbs "D" Lease Tracts. At the time Grubbs purchased the property from Lake Phantom in 2008, Grubbs believed that he owned the entirety of the one-quarter (1/4) interest in mineral and royalties under the property. Grubbs is the sole owner and manager of Premier Royalties, LLC, which is the operator of the Grubbs Lease Tracts. In March 2013, Grubbs, on behalf of Premier, authorized and directed his secretary to send letters to each of the four Campbell Children.[3] The letters expressed that

---

[3]While there is no copy of the letter that was sent to John H. Campbell, Grubbs testified that "it's almost 99.9 or a hundred percent that he was" also sent such a letter.

16

Grubbs "paid property taxes on [the Campbell Children's] royalty interest in Grubbs A." In the letters, Grubbs also requested, on behalf of Premier, that the Campbell Children reimburse Premier for the taxes Grubbs paid on the Campbell Children's behalf.[4]

Further, in response to these letters, three of the Campbell Children—Douglas, Eugenia, and Archibald—reimbursed the property taxes paid on their behalf. In fact, in response to Douglas's payment, Grubbs sent a letter in April 2013 to Douglas, on behalf of Premier, thanking Douglas for Douglas's payment of taxes "paid on [Douglas's] behalf for [Douglas's] royalty interest in Grubbs A." Finally, all of the Campbell Children continued to receive royalties from the Grubbs "A" Lease Tracts until they were placed in suspense in December of 2014. We further note that Grubbs and the Campbell Children agree that all of the production on the Grubbs Lease Tracts qualified as "new production" under the 2006 Deed.

Regarding the affirmative defense of waiver, Appellants assert that Grubbs intentionally engaged in conduct inconsistent with claiming a right to recover royalties from production on the Grubbs "A" Lease Tract. They argue that Grubbs testified that he believed he owned all of the disputed mineral and royalty interests under the Grubbs Lease Tracts at the time he purchased the property from Lake Phantom. But, in spite of this belief, Grubbs represented in the letters to the Campbell Children that they owned a royalty interest in the Grubbs "A" Lease Tract. Appellants also note that, for over a year after the letters were sent, the Campbell Children continued to receive royalties and that Grubbs waited over two years from

---

[4]The letters addressed to each Campbell Child are entitled: "Property Taxes on Your Royalty Interest in Grubbs A." The letters state: "I paid property taxes on your royalty interest in Grubbs A to [the recipient of the property taxes]." The letters then identify the specific amount paid and request the Campbell Child to "[p]lease remit a total of [dollar amount] to Premier Royalties at the below address for taxes I paid on your behalf." The letters then include a signature block, which includes the initials of Ricky Grubbs and his secretary above a single printed name: "Rick Grubbs."

17

when he sent the letters before he filed his counterclaim to recover those royalty payments. Therefore, Appellants contend that Grubbs waived his right to recover such royalties.

Appellee Grubbs maintains that he did not waive his right to recover royalties because Premier (not Grubbs personally) sent the letters to the Campbell Children. Thus, according to Grubbs, the only way the actions of Premier could be imputed to him individually "would be via an alter ego allegation." Grubbs appears to argue that, because the Campbell Children "did not plead piercing the corporate veil and did not offer evidence" in support of that claim, Grubbs did not waive his right to individually recover the royalties. Essentially, Grubbs argues that, because he did not personally engage in conduct (in his individual capacity) inconsistent with the right he now claims—entitlement to 100% of the royalties from production on the Grubbs "A" Lease Tract—but, rather, did so as an agent on behalf of Premier, the trial court correctly denied Appellants' affirmative defense of waiver.

At the outset, we first note that Appellee Grubbs's reliance on veil-piercing and alter-ego principles is misplaced. In Texas, such principles are typically used to hold a corporation's agent—such as its shareholders, officers, and directors—personally liable for the legal obligations of the corporation. In other words, these "theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders . . . what is otherwise only a corporate liability." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (discussing principles of Texas law). Policies governing piercing the corporate veil also apply to limited liability companies, such as Premier. *See Shook v. Walden*, 368 S.W.3d 604, 621 (Tex. App.—Austin 2012, pet. denied). However, because the Campbell Children are not seeking to impose individual liability on Grubbs based upon the business liability of Premier, we conclude that there was no need for the Campbell Children to plead piercing the corporate veil or allege alter ego.

18

Moreover, we note that while generally "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts"—and not the person's individual actions—this rule simply stands for the proposition that a corporate agent may not generally "be held liable *in damages* for inducing the corporation to violate a contractual obligation." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) (citing *Maxey v. Citizen's Nat'l Bank*, 507 S.W.2d 722, 726 (Tex. 1974)) (emphasis added). Appellee Grubbs cites to no authority, and we have found none, to support his argument that he could not have waived his individual right to recover royalties from the Grubbs "A" Lease Tract when he sent letters to the Campbell Children only in his capacity as an agent on behalf of Premier. The fact that Grubbs directed the letters to be sent in his capacity as an agent (rather than in his individual capacity) does not strip him of the knowledge he possessed when he did so—that the Campbell Children were receiving royalties from and possessed a royalty interest in the Grubbs "A" Lease Tract. Accordingly, we conclude that, with the requisite knowledge and intentional acts, Grubbs could have waived his personal right to recover royalties, in part, by sending the letters to the Campbell Children.

Nevertheless, we conclude that, when we view the evidence in the light most favorable to the verdict, it is not clear from Grubbs's conduct that he intended to relinquish his right to recover royalties from the Campbell Children. Although Grubbs testified that he believed he owned 100% of the disputed one-quarter royalty interest at the time Lake Phantom conveyed to him the property in 2008, Appellants have not presented conclusive evidence to indicate that Grubbs maintained this belief at all times prior to bringing his unjust-enrichment counterclaim in 2015. In particular, Appellants failed to present conclusive evidence to show that, when Grubbs sent the letters to the Campbell Children in 2013, he actually knew he had a full one-quarter royalty interest in the Grubbs Lease Tracts. Nor is there any conclusive evidence that establishes that Grubbs knew he had such an interest after

sending the letters. Therefore, because evidence showing that Grubbs had actual knowledge of the existence of his right (100% of the one-quarter royalty interest) at the time he sent the letters is lacking, the evidence fails to conclusively show that Grubbs intentionally engaged in conduct inconsistent with the right he now claims. Accordingly, we conclude that the trial court did not err when it denied the Campbell Children's affirmative defense of waiver.

Similarly, Appellants have not conclusively established that Grubbs is estopped from making a claim for the royalties in dispute. Equitable estoppel is an affirmative defense that "generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit." *Ulico*, 262 S.W.3d at 778. "[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998). The party relying on estoppel has the burden of proof, and the failure to prove any of the elements is fatal. *Dempsey v. Apache Shores Prop. Owners Ass'n*, 737 S.W.2d 589, 596 (Tex. App.—Austin 1987, no writ).

Here, Appellants have failed to conclusively prove that Grubbs knowingly made a false representation or concealment of a material fact. As discussed above, the record does not reflect that Grubbs knew he owned 100% of the disputed royalty interest at the time he sent the letters to the Campbell Children. Moreover, Appellants failed to conclusively establish that they were a party without the knowledge or the means of obtaining the knowledge of the material facts regarding who owned the royalty interests under the Grubbs "A" Lease Tract. Accordingly,

20

based on this record, we conclude that the trial court could have held that Appellants did not meet their burden of proof on the issue of equitable estoppel.

Lastly, we conclude that Appellants have not conclusively established that the doctrine of quasi estoppel bars Grubbs from asserting the right he now claims. Quasi estoppel is an affirmative defense that "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 778 (Tex. 2017) (internal quotation marks omitted, footnote omitted). "Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance." *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).

Here, Appellants have failed to present conclusive evidence that, at the time Grubbs sent the letters to the Campbell Children, he knew he owned the entirety of the one-quarter royalty interest in dispute. Thus, by sending the letters, the evidence does not conclusively establish that Grubbs engaged in intentional conduct inconsistent with the right he now claims. Because such evidence is lacking, it would not be unconscionable to allow Grubbs to assert his right to recover royalties from the Campbell Children. Therefore, we conclude that the record supports the trial court's conclusion that Appellants failed to establish the affirmative defense of quasi estoppel.

Accordingly, we overrule Appellants' fourth issue.

We next turn to Appellee/Cross-Appellant Grubbs's cross-appeal against the Campbell Children. In his sole issue, Grubbs contends that the trial court erred when it concluded that Section 16.069 of the Texas Civil Practice and Remedies Code— which, in certain cases, bars the application of the statute of limitations—does not

apply to revive his counterclaim for unjust enrichment against the Campbell Children. We agree.

"Whether the statute of limitations is applicable to a given factual situation is a question of law rather than a question of fact, unless there is a factual dispute as to when the injury occurred or should have been discovered." *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 397 (Tex. App.—Texarkana 1999, pet. denied). Where, as here, the facts are undisputed, we review de novo the question of whether Section 16.069 applies to permit a party's otherwise time-barred counterclaim. *See Chorman v. McCormick*, 172 S.W.3d 22, 24 n.3 (Tex. App.—Amarillo 2005, no pet.); *Doyer v. Pitney Bowes, Inc.*, 80 S.W.3d 215, 218 (Tex. App.—Austin 2002, pet. denied); *see also Musgrave*, 990 S.W.2d at 398.

In their plea in intervention filed on March 9, 2015, the Campbell Children joined Grubbs as a defendant-in-intervention. Afterwards, Grubbs filed a counterclaim for unjust enrichment against the Campbell Children to recover royalty payments they received from production on the Grubbs Lease Tracts; Grubbs claimed that the royalties rightfully belonged to him. The record reflects that Grubbs's counterclaim was barred by a two-year statute of limitations.

After the trial court interpreted the 2006 Deed, it concluded that, although the statute of limitations barred Grubbs's unjust-enrichment counterclaim, the two-year limitations period applied only to claims filed prior to March 9, 2013—exactly two years before the date the Campbell Children filed their plea in intervention.[5] As such, the trial court ruled that Grubbs was entitled to recover damages for past royalties accruing on and after March 9, 2013, but not before that date. At the subsequent bench trial, the trial court awarded damages in accordance with its ruling.

---

[5]The trial court issued this ruling in a letter. Although in the letter, the trial court ruled that "the two-year statute of limitations applies prior to March 5, 2013," this appears to be a typographical error. Based on the parties' stipulation, the correct date is March 9, 2013.

Grubbs argues on appeal, as he did at trial, that "[S]ection 16.069 of the Civil Practice and Remedies Code works [to bar] application of *any* limitations period to his claim for reimbursement against the [Campbell Children]" (emphasis added). In other words, Grubbs asserts that he was entitled to recover royalty payments from the Campbell Children that they wrongfully received both before and after March 9, 2013.

Section 16.069(a) provides: "If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required." TEX. CIV. PRAC. & REM. CODE ANN. § 16.069(a) (West 2015). In such a case, "[t]he counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required." *Id.* § 16.069(b).

Texas courts apply a "logical relationship" test to determine whether a counterclaim arises out of the same transaction or occurrence that is the basis of the underlying cause of action. *Allen Drilling Acquisition Co. v. Crimson Expl. Inc.*, 558 S.W.3d 761, 775 (Tex. App.—Waco 2018, pet. filed) (op. on reh'g); *Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 653 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Williams v. Nat'l Mortg. Co.*, 903 S.W.2d 398, 403–04 (Tex. App.—Dallas 1995, writ denied). To be logically related, the essential facts on which the claims are based must be significantly and logically relevant to both claims. *See Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex. App.—Tyler 2008, no pet.). Under this test, a "transaction" is flexible and may constitute a series of many occurrences logically related to one another. *Id.*

There is no dispute that Grubbs's counterclaim for unjust enrichment was filed within the required period of time under Section 16.069(b). However, the parties dispute whether Grubbs's counterclaim arose out of the same transaction or

23

occurrence of the underlying cause of action—the Campbell Children's declaratory judgment action.

Appellants assert that no logical relationship exists between Grubbs's counterclaim, by which he seeks to recover past royalties from the Campbell Children, and the Campbell Children's declaratory judgment action, by which they seek a declaration of their rights pursuant to the 2006 Deed.

To support their assertion, Appellants cite *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480 (Tex. App.—Texarkana 2000, pet. denied). In *Freeman*, the Cherokee Water Company brought a declaratory judgment action against the Freemans. *Freeman*, 11 S.W.3d at 482. The sole basis of the action was the interpretation of one provision in a deed, pertaining to a grant of fishing rights to the Freemans' parents. *Id.* at 483. In response to this action, the Freemans filed a counterclaim to set aside the entire deed. *Id.* at 482. The Freemans' counterclaim was "based entirely on the alleged fraudulent execution of the deed." *Id.* at 483. Because their counterclaim was barred by the statute of limitations, the Freemans relied upon Section 16.069 to revive it. *Id.* at 482–83.

The Texarkana Court of Appeals concluded that the Freemans' counterclaim was not logically related to Cherokee's action because the interpretation of the single provision at issue in Cherokee's action had nothing to do with the basis for the Freemans' fraud claim. *Id.* at 483. Importantly, the court noted that "[t]he matter in dispute in Cherokee's declaratory judgment action was not . . . the execution [or validity] of the deed." *Id.* Likewise, the court reasoned that "the Freemans' counterclaims in no way relate[d] to the fishing rights [provision], *or any other interpretation of the deed*." *Id.* (emphasis added). Therefore, the court concluded that the Freemans' counterclaim could not be saved by Section 16.069. *Id.*

We conclude that *Freeman* is easily distinguishable. Here, Grubbs's counterclaim and the Campbell Children's declaratory judgment action are logically

24

related, particularly because both claims depend upon the "interpretation of the deed." *See id.* We note that Grubbs's counterclaim arose out of the same transaction or occurrence (the 2006 Deed), which is also the basis for the Campbell Children's declaratory judgment action. In their declaratory judgment action, the Campbell Children sought a declaration as to what interests they owned in the property after their mother (Campbell) conveyed to them the interest she retained in the property after the execution of the 2006 Deed. Importantly, the Campbell Children's action centered on the interpretation of the 2006 Deed. Likewise, the merits of Grubbs's counterclaim also concerned the interpretation of the 2006 Deed. In particular, the interpretation of the 2006 Deed affects what interest Campbell owned when she conveyed her interest to her children—which, in turn, affects whether the Campbell Children were wrongfully paid royalties from the Grubbs Lease Tracts. Therefore, because the two claims are based on essentially the same facts—the execution of the 2006 Deed—a logical relationship exists between both claims.

Accordingly, we conclude that Section 16.069 barred the application of the two-year statute of limitations on Grubbs's counterclaim. As such, the statute of limitations does not bar Grubbs from recovering royalties that the Campbell Children received both before and after March 9, 2013. Thus, the trial court erred when it applied the statute of limitations and prevented Grubbs from recovering royalties that the Campbell Children received before March 9, 2013. We sustain Grubbs's sole cross-issue.

*This Court's Ruling*

We affirm the trial court's judgment pertaining to the interpretation of the 2006 Deed. We also affirm the trial court's judgment insofar as it denied the Campbell Children's affirmative defenses of waiver, equitable estoppel, and quasi estoppel. However, we reverse the trial court's judgment insofar as it applied the statute of limitations to Grubbs's unjust-enrichment counterclaim. Accordingly, we

affirm in part and reverse and remand in part to allow the trial court to enter judgment consistent with this opinion.


KEITH STRETCHER

JUSTICE


May 23, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[6]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.